Larry J. Wulkan (021404)
**STINSON LLP**
Firm Identification Number 00462400
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Telephone: (602) 279-1600
Fax: (602) 240-6925
Email: larry.wulkan@stinson.com

Counsel for Plaintiffs
*Additional counsel listed on following page*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Fenty, Brian Stepter, Douglas Crough, Edward Reason, Jesus Tequida, Ramon Avenenti, Anthony Scroggins, Dale Perez, and Tamara Ochoa on behalf of themselves and those similarly situated, | No. 2:20-cv-01192-SPL-JZB |
| Plaintiff-Petitioners, | **MOTION FOR CLASS CERTIFICATION** |
| Puente Human Rights Movement, | **(Oral Argument and Immediate Consideration Requested)** |
| Plaintiff, | |
| v. | |
| Sheriff Paul Penzone, in his official capacity, and Maricopa County, a municipal entity, | |
| Defendants. | |

Ethan J. Sanders* (MO 71151)
**STINSON LLP**
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-2628
ethan.sanders@stinson.com

Brian Raphel* (NY 5592308)
Pat Andriola* (NY 5406327)
Timothy Ly* (NY 5478540)
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
brian.raphel@dechert.com
pat.andriola@dechert.com
timonty.ly@dechert.com

Jared G. Keenan (AZ 027068)
Victoria Lopez** (AZ 330042)
Casey Arellano (AZ 031242)
**ACLU FOUNDATION OF ARIZONA**
P.O. Box 17148
Phoenix, AZ 85011
Telephone: (602) 650-1854
jkeenan@acluaz.org
vlopez@acluaz.org
casey.arellano@acluaz.org

Olga Akselrod (NY 4132825) *Pro Hac Vice*
Hugh Handeyside (NY 5394002)
*Pro Hac Vice*
Clara Spera (NY 5590229) *Pro Hac Vice*
Somil Trivedi* (NY 4834495)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569
oakselrod@aclu.org
hhandeyside@aclu.org
cspera@aclu.org
strivedi@aclu.org

Shari Ross Lahlou * (DC 476630)
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006 - 1110
Telephone: (202) 261-3300
shari_lahlou@dechert.com

Benjamin M. Sadun* (CA 287533)
Allison Ozurovich* (CA 312797)
**DECHERT LLP**
633 West 5th Street. Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
benjamin.sadun@dechert.com
allie.ozurovich@dechert.com

Eric Balaban (Admitted to Maryland Bar)
*Pro Hac Vice*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th St. NW, 7th Floor
Washington, DC 20005
Telephone: (202) 393-4930
ebalaban@aclu.org

Zoe Brennan-Krohn (CA 324912)
*Pro Hac Vice*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 343-0769
Zbrennan-krohn@aclu.org

*Application for *pro hac vice* forthcoming
**Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

Plaintiffs[1] move the Court to certify the following proposed classes and appoint Plaintiffs' counsel as class counsel:

- **Pretrial Class**: All current and future persons held by Defendants in pretrial detention at the five jails operated by the Maricopa County Sheriff's Office, known as the 4th Avenue, Saguaro,[2] Estrella, Lower Buckeye, and Towers jails (together, the "Maricopa County jails").

- **Post-Conviction Class**: All current and future persons held by Defendants in post-conviction detention at the Maricopa County jails.

Within these classes, Plaintiffs move for the Court to certify a "Medically Vulnerable" subclass, referred to as the **Pretrial Medically Vulnerable Subclass** and the **Post-Conviction Medically Vulnerable Subclass**. The Medically Vulnerable subclasses will include the members of each class who are aged 50 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19.

Within each of the Medically Vulnerable subclasses, Plaintiffs move to certify a narrower subclass, referred to as the **Pretrial Disability Subclass** and the **Post-Conviction Disability Subclass**, which will include all current and future pretrial detainees who are people with disabilities as defined under the Americans with Disabilities Act ("ADA")  and Section 504 of the Rehabilitation Act ("Section 504"), and whose disabilities put them at increased risk of serious illness or death if they contract COVID-19. This includes all Medically Vulnerable class members except for those who are deemed Medically Vulnerable solely because of their age or obesity.

Because Plaintiffs seek emergency class-wide relief, Plaintiffs further request that each of the classes and subclasses be provisionally certified for the purpose of ruling on Plaintiffs' Application for Temporary Restraining Order, filed concurrently herewith. *See Fraihat v. U.S. Immigration and Customs Enforcement*, 2020 WL 1932570, at *15 (C.D. Cal. Apr. 20, 2020) ("Courts in the Ninth Circuit routinely grant provisional class certification for purposes of entering injunctive relief").

---

[1] Aside from Puente Human Rights Movement, all plaintiffs seek appointment as class representatives.
[2] The Saguaro jail was recently opened and all inmates at another jail, known as Durango, were transferred to Saguaro.

## I.     BACKGROUND

This emergency action seeks to protect incarcerated persons and surrounding communities from the emerging public health disaster occurring at the Maricopa County jails as a result of Defendants' failure to adequately address the spread of COVID-19. The lives of approximately 4,380 people are at risk because housing conditions and medical services in the jails do not meet health authorities' minimum guidelines. As a result, COVID-19 is now spreading rapidly across the Maricopa County jails, with the number of confirmed cases reportedly increasing by more than *14,000 percent* in one month. The danger is particularly severe for people who are elderly, disabled or otherwise have certain medical conditions. Given Defendants' lack of progress in mitigating the disease and the unprecedented danger these exigent circumstances present, immediate class-wide relief is necessary.

Every class member faces a substantial and imminent risk of bodily harm as a result of their detention at the Maricopa County jails. All class members share a core common factual issue and a core common legal issue: what measures Defendants are taking at the Maricopa County jails to protect people who are incarcerated there from COVID-19, and whether those actions (and inactions) fall below minimum constitutional and federal disability law standards. Although the proposed classes and subclasses have minor variations in asserted legal theories and requested relief, the legal frameworks under which each claim will be analyzed largely overlap; the classes share every material issue in common. The individually named Plaintiffs ask this Court to appoint them and their counsel to represent the urgent interests of both classes.

## II.    THE PROPOSED CLASSES

Plaintiffs seek certification of two classes, each of which contains a subclass of medically vulnerable incarcerated persons, each of which contains a subclass of disabled incarcerated persons.

### A.     The Pretrial Class

The proposed Pretrial Class consists of individuals who have not been convicted of

the crime for which they are detained—and thus have a presumption of innocence—and who are awaiting trial while held in the Maricopa County jails. Under the Fourteenth Amendment, a detained person cannot be punished until there has been "a formal adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Thus, the government violates an incarcerated person's rights if the conditions of confinement amount to punishment. *See Doe v. Kelly*, 878 F.3d 710, 720 (9th Cir. 2017). The Fourteenth Amendment also requires that members of this proposed class are treated in a manner that is objectively reasonable. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071-72 (9th Cir. 2016). The Pretrial Class generally seeks injunctive relief requiring the Maricopa County jails to implement public health and safety measures for all Plaintiffs to ensure adequate social distancing, education, wide-spread testing, and other safety protocols.

Within the Pretrial Class, any class members who are medically vulnerable to COVID-19 by virtue of their age or their medical history are at greater risk of contracting COVID-19 and, once contracted, suffering particularly severe injuries or death as a result of the virus. Accordingly, Plaintiffs seek certification of the Pretrial Medically Vulnerable Subclass, which consists of all class members in the Pretrial Class who are "Medically Vulnerable," meaning they are aged 50 years or older or have medical conditions that place them at heightened risk of severe illness or death from COVID-19, such as (a) lung disease, (b) heart disease, (c) chronic liver or kidney disease (including hepatitis and dialysis patients), (d) diabetes, (e) hypertension, (f) compromised immune systems (such as from cancer, HIV, or autoimmune disease), (g) blood disorders (including sickle cell disease), (h) developmental disability (i) severe obesity, and/or (j) moderate to severe asthma. *See* Ex. 15 (Cohen Decl.) ¶ 4.[3] The Pretrial Medically Vulnerable Subclass seeks the same relief requested by the Pretrial Class, based on the same facts and legal theories, but additionally

---

[3] All "Ex." references are exhibits to the Notice of Filing Exhibits Supporting Plaintiff-Petitioners' Motion For A Temporary Restraining Order and Motion for Class Certification (Docket 8).

CORE/3502877.0004/160201059.2

seeks: (1) that members of the Pretrial Medically Vulnerable Subclasses who have already been granted bail but are still incarcerated only because they are unable to afford it be released immediately; and (2) that a process be put in place to individually review each remaining member of the Pretrial Medically Vulnerable Subclass to determine who would be appropriate for release from jail.

Within the Pretrial Medically Vulnerable Subclass, there are many individuals who have disabilities that substantially limit one or more of their major life activities and, as a result, are more acutely harmed by Defendants' failure to provide constitutionally adequate protection from COVID-19. Hence, Plaintiffs seek certification of a Pretrial Disability Subclass, which includes all current and future pretrial detainees who are people with disabilities as defined under the ADA and Section 504, and whose disabilities put them at increased risk of serious illness or death if they contract COVID-19. As such, the Pretrial Disability Subclass includes all members of the Pretrial Medically Vulnerable Subclass except for those who are deemed Medically Vulnerable based solely on their age or obesity. The Pretrial Disability Subclass seeks the same relief as the Pretrial Medically Vulnerable Subclass, including release for those who have been granted unaffordable bail and a process for individual consideration of release for all others in the subclass, based on the same facts and legal theories, but also asserts, as additional grounds for relief, that Defendants' conduct violates the ADA and Section 504.

**B.     The Post-Conviction Class**

The proposed Post-Conviction Class consists of individuals who have been convicted. Under the Eighth Amendment, prison officials "must provide humane conditions of confinement;" "ensure that inmates receive adequate food, clothing, shelter, and medical care," and "take reasonable measures to guarantee the safety" of these prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).

Like the Pretrial Class, the Post-Conviction Class also includes many class members who are "Medically Vulnerable." Plaintiffs therefore seek certification of the Post-Conviction Medically Vulnerable Subclass, which consists of all members of the Post-

- 4 -

Conviction Class who are Medically Vulnerable. The Post-Conviction Medically Vulnerable Subclass seeks the same relief requested by the Post-Conviction Class and seeks, as additional relief, that a process be put in place to individually review each member of the Post-Conviction Medically Vulnerable Subclass to determine who would be appropriate for release from jail.

Within the Post-Conviction Medically Vulnerable Subclass, there are many individuals who have disabilities that substantially limit one or more of their major life activities and, as a result, are more acutely harmed by Defendants' failure to provide constitutionally adequate protection from COVID-19. Plaintiffs seek certification of the Post-Conviction Disability Subclass, which includes all current and future post-conviction incarcerated persons who have disabilities as defined under the ADA and Section 504, and whose disabilities put them at increased risk of serious illness or death if they contract COVID-19. As such, the Post-Conviction Disability Subclass includes all members of the Post-Conviction Medically Vulnerable Subclass except for those who are deemed Medically Vulnerable based solely on their age or obesity. The Post-Conviction Disability Subclass seeks the same relief as the Post-Conviction Medically Vulnerable Subclass, based on the same facts and legal theories, but also asserts, as additional grounds for relief, that Defendants' conduct violates the ADA and Section 504.

### III.   THE PROPOSED CLASS REPRESENTATIVES

Plaintiffs seek the appointment of nine individuals as class representatives. Each of them is currently incarcerated in one of the Maricopa County jails. Combined, the individually-named Plaintiffs include representatives from each of the five jails and representatives for each of the proposed classes and subclasses.

Jason Fenty – Towers Jail

(*Pretrial Class, Pretrial Medically Vulnerable Subclass, and Pretrial Disability Subclass*)

Mr. Fenty is a 48-years-old and is currently incarcerated at the Towers Jail, where he is awaiting trial. He is a member of the Pretrial Class. He has stage 2 hypertension,

- 5 -

1   adjustment disorder with anxiety, PTSD, and chest pain, which places him within the

2   Pretrial Medically Vulnerable Subclass and the Pretrial Disability Subclass. He has

3   personally observed and experienced the unconstitutional conditions at Towers, created as

4   a result of policies and procedures in effect in all Maricopa County jails that are woefully

5   inadequate to protect him and his fellow class members from the risks created by COVID-

6   19.

7          Brian Stepter – Lower Buckeye Jail

8          (*Pretrial Class, Pretrial Medically Vulnerable Subclass, and Pretrial Disability*

9   *Subclass*)

10         Mr. Stepter is a 61-years-old; he is currently incarcerated at the Lower Buckeye Jail,

11  where he is awaiting trial. He is a member of the Pretrial Class. Additionally, he has chronic

12  respiratory problems that result in difficulty breathing, requires oxygen treatments to clear

13  his lungs, and also has high blood pressure. He is thus within the Pretrial Medically

14  Vulnerable Subclass and the Pretrial Disability Subclass. He has personally observed and

15  experienced the unconstitutional conditions at Lower Buckeye, created as a result of

16  policies and procedures in effect in all Maricopa County jails that are woefully inadequate

17  to protect him and his fellow class members from the risks created by COVID-19.

18         Douglas Crough – Lower Buckeye Jail

19         (*Pretrial Class, Pretrial Medically Vulnerable Subclass, and Pretrial Disability*

20  *Subclass*)

21         Mr. Crough is a 55-years-old; he is currently incarcerated at the Lower Buckeye Jail,

22  where he is awaiting trial. He is a member of the Pretrial Class. Mr. Crough has a heart

23  condition, chronic obstructive pulmonary disease (COPD), hepatitis, and chest pain caused

24  by stable angina, which places him within the Pretrial Medically Vulnerable Subclass and

25  the Pretrial Disability Subclass. He has personally observed and experienced the

26  unconstitutional conditions at Lower Buckeye, created as a result of policies and procedures

27  in effect in all Maricopa County jails that are woefully inadequate to protect him and his

28  fellow class members from the risks created by COVID-19.

CORE/3502877.0004/160201059.2

<u>Edward Reason – Saguaro Jail</u>

(*Post-Conviction Class, Post-Conviction Medically Vulnerable Subclass, and Post-Conviction Disability Subclass*)

Mr. Reason is a 62-years-old; he is currently serving a 60-day sentence at the Saguaro Jail. As such, he is a member of the Post-Conviction Class. Additionally, he has a respiratory condition known to heighten the danger posed by a COVID-19 infection, especially given his advanced age, which places him within the Post-Conviction Medically Vulnerable Subclass and the Post-Conviction Disability Subclass. He has personally observed and experienced the unconstitutional conditions at Saguaro (and Durango, where he was previously housed), created as a result of policies and procedures in effect in all Maricopa County jails that are woefully inadequate to protect him and his fellow class members from the risks created by COVID-19.

<u>Jesus Tequida – Lower Buckeye Jail</u>

(*Post-Conviction Class, Post-Conviction Medically Vulnerable Subclass, and Post-Conviction Disability Subclass*)

Mr. Tequida is a 64-year-old man currently incarcerated at the Lower Buckeye Jail, where he is awaiting sentencing. He is a member of the Post-Conviction Class. Mr. Tequida has serious health issues including, among other things, high blood pressure, kidney failure, cardiomyopathy, cardiomegaly, heart failure, hepatitis, as well as liver and prostate problems, which places him within the Post-Conviction Medically Vulnerable Subclass and the Post-Conviction Disability Subclass. He has personally observed and experienced the unconstitutional conditions at Lower Buckeye, created as a result of policies and procedures in effect in all Maricopa County jails that are woefully inadequate to protect him and his fellow class members from the risks created by COVID-19.

<u>Ramon Avenenti – Lower Buckeye Jail</u>

(*Post-Conviction Class*)

Mr. Avenenti is a 42-year-old man who is currently incarcerated at the Lower Buckeye Jail, where he is awaiting sentencing following a plea bargain in February 2020.

- 7 -

As such, he is a member of the Post-Conviction Class. He has personally observed and experienced the unacceptable conditions at Lower Buckeye, created as a result of policies and procedures in effect in all Maricopa County jails that are woefully inadequate to protect him and his fellow class members from the risks created by COVID-19.

Anthony Scroggins – 4th Avenue Jail

(*Pretrial Class, Pretrial Medically Vulnerable Subclass, and Pretrial Disability Subclass*)

Mr. Scroggins is a 44-years-old; he is currently incarcerated at the 4th Avenue Jail, where he is awaiting trial. As such, he is a member of the Pretrial Class. Additionally, he has been diagnosed with asthma, which increases his vulnerability to COVID-19. He also has allergies, neuropathy, gout, and schizophrenia. Accordingly, he is a member of the Pretrial Medically Vulnerable Subclass and the Pretrial Disability Subclass. He has personally observed and experienced the unacceptable conditions at 4th Avenue, created as a result of policies and procedures in effect in all Maricopa County jails that are woefully inadequate to protect him and his fellow class members from the risks created by COVID-19.

Dale Perez – Towers Jail

(*Pretrial Class*)

Mr. Perez is a 36-years-old; he is currently incarcerated at the Towers Jail, where he is awaiting trial. He is a member of the Pretrial Class. He has personally observed and experienced the unconstitutional conditions at 4th Avenue, created as a result of policies and procedures in effect in all Maricopa County jails that are woefully inadequate to protect him and his fellow class members from the risks created by COVID-19.

Tamara Ochoa – Estrella Jail

(*Pretrial Class*)

Ms. Ochoa is a 27-years-old; she is currently incarcerated at the Estrella Jail, where she is awaiting trial. She is a member of the Pretrial Class. She has personally observed and experienced the unconstitutional conditions at 4th Avenue, created as a result of policies

- 8 -

1   and procedures in effect in all Maricopa County jails that are woefully inadequate to protect

2   her and her fellow class members from the risks created by COVID-19

3         Combined, six of the individually named Plaintiffs are members of the Pretrial Class

4   (Mr. Fenty, Mr. Stepter, Mr. Crough, Mr. Scroggins, Mr. Perez, Ms. Ochoa), four are

5   members of the Pretrial Medically Vulnerable Subclass (Mr. Fenty, Mr. Stepter,

6   Mr. Crough, Mr. Scroggins), four are members of the Pretrial Disability Subclass

7   (Mr. Fenty, Mr. Stepter, Mr. Crough, Mr. Scroggins), three are members of the Post-

8   Conviction Class (Mr. Reason, Mr. Tequida, Mr. Avenenti), two are members of the Post-

9   Conviction Medically Vulnerable Subclass (Mr. Reason, Mr. Tequida), and two are

10   members of the Post-Conviction Disability Subclass (Mr. Reason, Mr. Tequida).

11   Additionally, one of the individually named Plaintiffs resides at the 4th Avenue jail

12   (Mr. Scroggins), one resides at the Saguaro jail (Mr. Reason), one resides at the Estrella jail

13   (Ms. Ochoa), three reside at the Lower Buckeye jail (Mr. Stepter, Mr. Crough,

14   Mr. Tequida), and two reside at the Towers jail (Mr. Fenty, Mr. Perez).

15   **IV.   LEGAL ARGUMENT**

16         "Under Rule 23(a), a party seeking certification of a class or subclass must satisfy

17   four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

18   representation." *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014). The party's "proposed

19   class or subclass must also satisfy the requirements of one of the sub-sections of Rule 23(b),

20   which defines three different types of classes." *Id.* (internal quotation marks and citation

21   omitted). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to

22   act on grounds that apply generally to the class, so that final injunctive relief or

23   corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ.

24   P. 23(b)(2). A party "whose suit meets the specified criteria" of Rule 23(a) and Rule 23(b)

25   has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic*

26   *Assocs., P.A. v. Allstate Ins.*, Co., 559 U.S. 393, 398 (2010). Moreover, when a plaintiff

27   makes a preliminary showing that Rule 23 has been satisfied and seeks preliminary

28   injunctive relief, the Court may also provisionally certify a class for the purpose of granting

that relief. *See, e.g., Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042-43 (9th Cir. 2012).

Because class certification is a procedural device that is appropriate whenever the prerequisites set forth in Rules 23(a) and 23(b) are met, the Court's review when considering a motion for class certification is limited only to whether those prerequisites are satisfied. No determination of whether the underlying claims are meritorious is necessary or appropriate at this time. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974).

### A.   The Proposed Classes Satisfy Rule 23(a)(1)-(4)

#### 1.   *The Proposed Classes Are Sufficiently Numerous.*

Each of Plaintiffs' proposed classes—which together contain thousands of individuals, and which seek only class-wide injunctive relief—satisfies numerosity. Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder must be difficult or inconvenient but need not be impossible. *See Harris v. Palm Springs Alpine Estates*, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). "In addition to class size, courts consider other indicia of impracticability, such as . . . the size of individual claims, the financial resources of class members, and the ability of claimants to institute individual suits." *Torres v. Goddard*, 314 F.R.D. 644, 654 (D. Ariz. 2010) (citation omitted). Where, as here, the relief sought is "only injunctive or declaratory," the numerosity requirement is somewhat relaxed. *See Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004).

Generally, courts find numerosity "when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Where the exact number of class members is unknown, the court may find that numerosity is met if "general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019). Here, the exact numbers and identities of members in each class and subclass are unknown because this information is exclusively within Defendants' control, and it "is precisely in situations such as this that joinder of

- 10 -

plaintiffs is impracticable because it is difficult to identify the proposed class members." *Franco-Gonzales v. Napolitano*, 2011 WL 11705815, at *8 (C.D. Cal. Nov. 21, 2011). However, common sense dictates that each class and subclass almost certainly include at least 40 members since we know, by Defendants' own reporting, that there are roughly 4,500 individuals currently within the jail. There are at least 300 incarcerated people who are medically vulnerable based solely on their age. *See* Complaint ¶ 33. Further, at least one study conducted by the Department of Justice found that "half of state and federal prisoners and local jail inmates reported having a chronic condition,"[4] suggesting that there may be *thousands* of medically vulnerable and disabled persons within the classes. Indeed, the CDC has recognized that "incarcerated/detained populations have higher prevalence of infectious and chronic diseases and are in poorer health than the general population, even at younger ages."[5]

Finally, other factors make joinder impracticable. *First*, joinder takes time, and delay here will increase serious harms and even deaths. According to the government's own data, COVID-19 is spreading exponentially across the Maricopa County jails, increasing more than 14,000 percent in the past month. *Second*, communicating with people incarcerated in the Maricopa County jails is exceptionally difficult since it must be done by scheduled and time-limited video-conference sessions. *Third*, both classes are inherently transitory and include unidentifiable future members who will be but are not yet residents of the Maricopa County jails.[6] See *Chief Goes Out v. Missoula Cty.*, 2013 WL 139938, at *2 (D. Mont. Jan. 10, 2013) (finding numerosity met because the "fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals

---

[4] https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf
[5] Ctrs. for Disease Control & Prevention, CS 316182-A, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 27, 2020), https://cutt.ly/EyMHwLV
[6] Moreover, the inclusion of future members in the class is a factor in favor of certification as it weighs in favor of numerosity. *See, e.g.*, *Parsons*, 754 F.3d at 672 (affirming class certification of class of "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the [Ariz. Dep't of Corrections]").

CORE/3502877.0004/160201059.2

involved may change, the nature of the wrong and the basic parameters of the group affected remain constant") (quotations and citation omitted). *Fourth*, all class members are incarcerated, and many are indigent, rendering their ability to seek counsel and file individual actions limited at best. *Fraihat*, 2020 WL 1932570, at *17 (finding numerosity for detained population because of "the turmoil, expense, and difficulty caused by a piecemeal approach"). This is especially true for those people in the Medically Vulnerable subclasses, whose age and/or medical conditions may make organizing legal action particularly difficult. For most if not all members of the classes, being forced to litigate their claims on an individual basis would, in effect, mean that the ongoing violation of their constitutional rights would remain unheard and unaddressed—potentially until it is too late.

### 2.   *The Proposed Classes Satisfy Commonality.*

Commonality requires plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A clear line of precedent . . . firmly establishes that when inmates provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied." *Parsons*, 754 F.3d at 684. Federal courts routinely find that commonality exists for classes of people who allege system-wide failures in large state institutional agencies. *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011) ("In a civil rights suit, 'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"). Commonality requires plaintiffs to assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*"). Under the *Dukes* standard, "numerous courts have concluded that the commonality requirement can be satisfied by proof of the existence of systemic policies and practices that allegedly expose inmates to a substantial risk of harm." *Parsons*, 754 F.3d at 681 (collecting cases); *see also Unknown Parties v. Johnson*, 163 F. Supp. 3d 630, 635 (D. Ariz. 2016) ("In the civil rights

- 12 -

context, commonality is satisfied 'where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'") (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)).

Moreover, commonality "does not . . . mean that every question of law or fact must be common to the class." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013). To the contrary, "even a single common question" may satisfy Rule 23(a)(2). *Parsons*, 754 F.3d at 675. "The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting omitted).

Here, all members of the proposed Pretrial and Post-Conviction Classes share a common set of facts: all are confined at the Maricopa County jails and are therefore subject to the same policies, procedures, and practices that are part and parcel of Defendants' woefully inadequate response to COVID-19. All have been directed by the CDC and other health authorities to abide by certain social distancing practices for their own safety, as well as the safety of others, and their common inability to comply with those guidelines is the direct result of the common conditions of confinement provided by the Defendants. All are subject to the same conditions that actively promote, rather than ameliorate, the spread of COVID-19. *See Unknown Parties*, 163 F. Supp. 3d at 640 (holding that "claims involving overall conditions that affect the rights of all putative class members are sufficient to satisfy commonality" and that whether "such conditions result from Defendants' stated policies or from their alleged failure to create or adhere to those policies does not change the commonality analysis"); *cf. Parsons*, 754 F.3d at 678 (finding commonality where "all members of the putative class and subclass have in common . . . their alleged exposure, as a result of specified statewide ADC policies and practices . . , to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent").[7]

---

[7] Although there may be minor differences in the conditions at each of the Maricopa County

Additionally, each of the proposed classes present common questions of law. Specifically, each class and subclass asks whether the Defendants' policies subject the class members to a heightened risk of serious illness and death in violation of their Fourteenth Amendment due process rights and/or Eighth Amendment rights against cruel and unusual punishment. The Pretrial Disability Subclass and the Post-Conviction Disability subclasses also share common questions of law regarding whether Defendants' conduct violates the ADA and/or Section 504. Each class and subclass further asks what relief is necessary to mitigate the risks posed by their confinement in the Maricopa County jails.

In another COVID-19 case, the court, in *Ahlman v. Barnes*, 2020 WL 2754938 (C.D. Cal. May 26, 2020), provisionally certified classes and subclasses of pre-trial and post-conviction detainees in the wake of COVID-19. The Court found, because "Plaintiffs challenge Defendants' institution-wide response and seek institution-wide injunctive relief . . . the relevant questions such as deliberate indifference will be decided on a class-wide, rather than individual, basis." *Id.* at *7.

Courts in the circuit have also provisionally certified classes of persons in immigration detention who assert constitutional challenges similar to those here. *See Hernandez Roman v. Wolf*, No. 20-00768 TJH (PVCx) (C.D. Cal. Apr. 23, 2020), ECF No. 52. Similarly, in *Fraihat*, the court observed: "Despite Plaintiffs' admitted differences, each putative class member finds herself in similar situation." 2020 WL 1932570, at *18. Whether Defendants' inadequate policies in response to COVID-19 violate Plaintiffs' constitutional rights depends upon the existence of "a common contention . . . capable of class-wide resolution," for which the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

---

jails, they each remain subject to the same inadequate policies and procedures enacted and enforced by the Defendants. The question of whether those policies and procedures violate the class members' constitutional rights is more than sufficient to satisfy Rule 23's requirement of a single common question of fact. Further, the Individual Plaintiffs include representatives from each of the five Maricopa County jails. *See infra*.

- 14 -

### 3.    The Individual Plaintiffs' Claims Are Typical Of The Claims Of The Classes And Subclasses

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted). "The test of typicality is 'whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685. Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citation omitted). Variations among individual plaintiffs' circumstances, or the extent of their injuries, will not defeat typicality as long as the named plaintiffs' injuries arise "from the same event or practice or course of conduct that [gives] rise to the claims of other class members," and the named plaintiffs' claims are "based on the same legal theory" as the class's claims. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020) (quotations and citations omitted).

Each of the individually named Plaintiffs asserts substantively identical claims that arise from the same failure by Defendants to adequately implement social distancing and other appropriate health and safety measures in the Maricopa County jails in response to COVID-19. The individually named Plaintiffs are subject to similar conditions of confinement that present a significant yet avoidable risk of serious illness and death from contracting COVID-19. *See Unknown Parties*, 163 F. Supp. 3d at 641 (finding typicality because Plaintiffs "experienced the same overall conditions of confinement"); *see also Ahlman*, 2020 WL 2754938, at *8 (finding typicality in a COVID-19 case). Each of the individually named Plaintiffs asserts claims that are typical of those asserted by the other

- 15 -

members of the classes and subclasses that each individually named Plaintiff seeks to represent.

### 4. The Individually Named Plaintiffs Are Adequate Class Representatives and Have Retained Adequate Class Counsel.

Adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'" *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998). The adequacy requirement "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (alteration in original) (citation and quotation marks omitted). The adequacy requirement is met here because Plaintiffs and their counsel will adequately represent the interests of both classes, which are aligned and intertwined.

Class counsel are "qualified" when they can establish their experience in previous class actions and cases involving the same area of law. *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984). Here, class counsel are attorneys from the American Civil Liberties Union Foundation ("ACLU"), the ACLU of Arizona, Dechert LLP, and Stinson LLP, who, individually and collectively, have extensive relevant experience to litigate this matter to completion. *See* Ex. 24 (Akselrod Decl.); Ex. 25 (Lopez Decl.); Ex. 26 (Ross Lahlou Decl.); Ex. 27 (Wulkan Decl.). These attorneys have participated as class counsel, or have extensive subject-matter expertise, in numerous civil-rights related cases before this Court and others, including in other cases related to COVID-19 in the detention context. Counsel know of no conflicts among the proposed class members or between counsel and the proposed class members, and counsel will vigorously represent the proposed classes.

The individually named Plaintiffs have the requisite personal interest in the outcome of this case, which they share will all class members, and they will fairly and adequately

- 16 -

CORE/3502877.0004/160201059.2

protect the interests of the proposed classes.

### B.   The Proposed Classes Satisfy Rule 23(b)(2).

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem*, 521 U.S. at 614. There can be no reasonable dispute that the instant action falls squarely within Rule 23(b)(2). That is because "the primary role of this provision has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686 (citation omitted). Courts "have repeatedly invoked" Rule 23(b)(2) "to certify classes of inmates seeking declaratory and injunctive relief for alleged widespread Eighth Amendment violations in prison systems." *Parsons*, 754 F.3d at 686.

In the Ninth Circuit, "it is sufficient to meet" Rule 23(b)(2)'s requirements when "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez*, 591 F.3d at 1125-26. That inquiry is easily satisfied here. *First*, Defendants are acting on grounds that are generally applicable to the proposed classes because Defendants have subjected all proposed class members to the same unconstitutional policies or practices that expose Plaintiffs to an unreasonable risk of serious harm. *Second*, the injunctive relief requested by Plaintiffs is appropriate for each class as a whole. Each class requests uniform relief in the form of certain declarations and an injunction. In order to comply with the requested injunction, Defendants would have to implement facility-wide changes applicable to, and for the benefit of, all class members. Thus, Rule 23(b)(2) is satisfied.[8]

## V.   <u>CONCLUSION</u>

Plaintiffs proposed classes and subclasses should be certified.

---

[8]Alternatively, Plaintiffs' proposed classes satisfy Rule 23(b)(1) because requiring hundreds of individual class members to prosecute separate actions on the same claims would create a significant risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

- 17 -

RESPECTFULLY SUBMITED, this 29th day of June, 2020.

STINSON LLP

*/s/ Larry Wulkan*
Larry J. Wulkan (021404)
**STINSON LLP**
Firm Identification Number 00462400
1850 North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4584
Telephone: (602) 279-1600
Fax: (602) 240-6925
Email: larry.wulkan@stinson.com

**ETHAN J. SANDERS\*** (MO 71151)
(ethan.sanders@stinson.com)
**STINSON LLP**
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 691-2628

**SHARI ROSS LAHLOU\*** (DC SBN 476630)
(shari.lahlou@dechert.com)
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006 - 1110
Telephone: (202) 261-3300

**BRIAN RAPHEL\*** (NY SBN 5592308)
(brian.raphel@dechert.com)
**PAT ANDRIOLA\*** (NY SBN 5406327)
(pat.andriola@dechert.com)
**TIMOTHY LY\*** (NY SBN 5478540)
(timothy.ly@dechert.com)
**DECHERT LLP**
Three Bryant Park, 1095 Avenue of the
Americas
New York, NY 10036
Telephone: (212) 698-3500

**BENJAMIN M. SADUN\*** (CA SBN 287533)
(benjamin.sadun@dechert.com)
**ALLISON OZUROVICH\*** (CA SBN 312797)
(allie.ozurovich@dechert.com)

**DECHERT LLP**
633 West 5th Street. Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700

**JARED G. KEENAN** (SBN 027068)
(jkeenan@acluaz.org)
**CASEY ARELLANO** (SBN 031242)

- 18 -

(carellano@acluaz.org)
**VICTORIA LOPEZ**\*\* (SBN 330042)
(vlopez@acluaz.org)
**ACLU FOUNDATION OF ARIZONA**
P.O. Box 17148
Phoenix, AZ 85011
Telephone: (602) 650-1854

**OLGA AKSELROD** (*Admitted Pro Hac Vice*)
(oakselrod@aclu.org)
**ERIC BALABAN** (*Admitted Pro Hac Vice*)
(ebalaban@aclu.org)
**ZOE BRENNAN-KROHN** (*Admitted Pro Hac Vice*) (ZBrennan-Krohn@aclu.org)
**HUGH HANDEYSIDE** (*Admitted Pro Hac Vice*) (hhandeyside@aclu.org)
**CLARA SPERA** (*Admitted Pro Hac Vice*)
(cspera@aclu.org)
**SOMIL TRIVEDI**\* (NY SBN 4834495)
(strivedi@aclu.org)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014
Telephone: (212) 549-2569

915 15th St. NW, 7th Floor
Washington, DC 20005
Telephone: (202) 393-4930

39 Drumm Street
San Francisco CA 94111
Telephone: (415) 343-0769

\*Application for *pro hac vice* forthcoming
\*\*Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

## CERTIFICATE OF SERVICE

I hereby certificate that on June 29, 2020, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF, and served the counsel of record via the Court's CM/ECF System:

/s/      Kathleen Kaupke

CORE/3502877.0004/160201059.2