1 | Larry J. Wulkan (021404)
**STINSON LLP**
2 | Firm Identification Number 00462400
1850 North Central Avenue, Suite 2100
3 | Phoenix, Arizona 85004-4584
Telephone: (602) 279-1600
4 | Fax: (602) 240-6925
Email: larry.wulkan@stinson.com
5

6

7 | Counsel for Plaintiffs
*Additional counsel listed on following page*

8

9

10 | **UNITED STATES DISTRICT COURT**

11 | **DISTRICT OF ARIZONA**

12

13 | Jason Fenty, Brian Stepter, Douglas Crough, Edward Reason, Jesus Tequida, Ramon Avenenti, Anthony Scroggins, Dale Perez, and Tamara Ochoa on behalf of themselves and those similarly situated,

Case No. 2:20-cv-01192-SPL-JZB

**REPLY IN SUPPORT OF PLAINTIFF-PETITIONERS' MOTION FOR CLASS CERTIFICATION**

16 | Plaintiff-Petitioners,

17 | Puente Human Rights Movement,

18 |       Plaintiff,

19 | v.

20 | Paul Penzone, in his official capacity, and Maricopa County, a municipal entity,

22 |       Defendants.

23

24

25

26

27

28

CORE/3502877.0004/161331079.1

1  **ETHAN J. SANDERS\*** (MO 71151) (ethan.sanders@stinson.com)
   **STINSON LLP**
2  1201 Walnut Street, Suite 2900
   Kansas City, MO 64106
3  Telephone: (816) 691-2628

4  **SHARI ROSS LAHLOU** (*Admitted Pro Hac Vice*) (shari.lahlou@dechert.com)
   **DECHERT LLP**
5  1900 K Street, N.W.
   Washington, DC 20006 - 1110
6  Telephone: (202) 261-3300

7  **PAT ANDRIOLA** (*Admitted Pro Hac Vice*) (pat.andriola@dechert.com)
   **TIMOTHY LY** (*Admitted Pro Hac Vice*) (timothy.ly@dechert.com)
8  **DECHERT LLP**
   Three Bryant Park, 1095 Avenue of the Americas
9  New York, NY 10036
   Telephone: (212) 698-3500
10
   **BENJAMIN M. SADUN** (*Admitted Pro Hac Vice*) (benjamin.sadun@dechert.com)
11 **ALLISON OZUROVICH** (*Admitted Pro Hac Vice*) (allie.ozurovich@dechert.com)
   **DECHERT LLP**
12 633 West 5th Street. Suite 4900
   Los Angeles, CA 90071
13 Telephone: (213) 808-5700

14 **JARED G. KEENAN** (SBN 027068) (jkeenan@acluaz.org)
   **CASEY ARELLANO** (SBN 031242) (carellano@acluaz.org)
15 **ACLU FOUNDATION OF ARIZONA**
   P.O. Box 17148
16 Phoenix, AZ 85011
   Telephone: (602) 650-1854
17
   **OLGA AKSELROD** (*Admitted Pro Hac Vice*) (oakselrod@aclu.org)
18 **ERIC BALABAN** (*Admitted Pro Hac Vice*) (ebalaban@aclu.org)
   **ZOE BRENNAN-KROHN** (*Admitted Pro Hac Vice*) (ZBrennan-Krohn@aclu.org)
19 **HUGH HANDEYSIDE** (*Admitted Pro Hac Vice*) (hhandeyside@aclu.org)
   **CLARA SPERA** (*Admitted Pro Hac Vice*) (cspera@aclu.org)
20 **SOMIL TRIVEDI** (*Admitted Pro Hac Vice*) (strivedi@aclu.org)
   **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
21 125 Broad Street, 18th Floor
   New York, NY 10014
22 Telephone: (212) 549-2569

23 915 15th St. NW, 7th Floor
   Washington, DC 20005
24 Telephone: (202) 393-4930

25 39 Drumm Street
   San Francisco CA 94111
26 Telephone: (415) 343-0769

27

28

1    **I.     INTRODUCTION**

2          Although styled as an opposition to class certification, Defendants' brief opposes

3    very little that is relevant to class certification, and the Court has already addressed most

4    of what Defendants purport to oppose.  Defendants concede the classes are sufficiently

5    numerous and then ignore Plaintiffs' evidence regarding the expected size of the

6    subclasses.  Defendants raise no specific objection to the adequacy and typicality of all

7    but one of the proposed class representatives, nor do they raise any specific objection to

8    the adequacy and typicality of four of the proposed subclass representatives (Crough,

9    Perez, Ochoa, and Tequida).  Defendants do not challenge the adequacy of class counsel.

10   Nor do they directly challenge any of the class or subclass definitions.

11         Instead, Defendants spend most of their brief rearguing issues this Court has

12   already rejected in denying their motion to dismiss.  Defendants continue to suggest that

13   this case arises out of individualized disputes against the specific facilities in which each

14   class member is housed, ignoring this Court's ruling that "Plaintiffs' claims are not about

15   the specific facilities where each is housed, but about Defendants' policies and practices

16   with respect to COVID-19 at all Maricopa County jails."  Doc. 52 at 11.  They again

17   assert that the class representatives failed to exhaust available administrative remedies

18   even though this Court already rejected that argument "at this early stage of the

19   litigation."  *Id.* at 14.  They reargue that the single claim seeking habeas relief should be

20   dismissed, not certified—an argument the Court's ruling forecloses.  *See* Doc. 32 at 24-25

21   (asserting argument); Doc. 52 at 14 (denying motion to dismiss).

22         The claims Plaintiffs assert here are precisely the type that should be certified as

23   class claims under Rule 23(b)(2).  *See, e.g., Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir.

24   2014) ("courts have repeatedly invoked [Rule 23(b)(2)] to certify classes of inmates

25   seeking declaratory and injunctive relief for alleged widespread Eighth Amendment

26   violations in prison systems.").  It is for this reason that other courts have repeatedly

27   certified nearly identical classes seeking to challenge prison policies regarding COVID-

28   19.  *See, e.g, Hernandez Roman v. Wolf*, No. 20-00768 TJH (PVCx) (C.D. Cal. Apr. 23,

1

1    2020), ECF No. 52; *Fraihat v. U.S. Immigration & Customs Enf't,* No.

2    EDCV191546JGBSHKX, 2020 WL 2759848 (C.D. Cal. Apr. 15, 2020); *Ahlman v.*

3    *Barnes,* --F. Supp. 3d--, No. SACV 20-835 JGB, 2020 WL 2754938 (C.D. Cal. May 26,

4    2020).  Despite Defendants' best efforts to reargue a motion they already lost, the class

5    certification analysis is straightforward.  Plaintiffs need only satisfy each element of Rule

6    23(a) and one element of Rule 23(b), which they easily do.

7    **II.    PLAINTIFFS EASILY SATISFY ALL RULE 23 REQUIREMENTS.**

8          Class certification is a procedural device that Plaintiffs have a "categorical right" to

9    invoke so long as their claims meet the "specified criteria" of Rule 23(a) and one of the

10   subsections of Rule 23(b).  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.,* Co.,

11   559 U.S. 393, 398 (2010).  Rule 23(a) includes four requirements: (1) numerosity;

12   (2) commonality; (3) typicality; and (4) adequacy of representation."  *Parsons,* 754 F.3d

13   at 674.  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to

14   act on grounds that apply generally to the class, so that final injunctive relief or

15   corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R.

16   Civ. P. 23(b)(2).  Except where essential to the consideration of these specific factors, no

17   further consideration of the merits is necessary or appropriate at this time.  *See, e.g.,*

18   *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013) ("Merits

19   questions may be considered to the extent—but only to the extent—that they are relevant

20   to determining whether the Rule 23 prerequisites for class certification are satisfied.")

21   (citation omitted); *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178 (1974) ("In

22   determining the propriety of a class action, the question is not whether the plaintiff or

23   plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the

24   requirements of Rule 23 are met.") (citation omitted).

25         **A.    The Classes and Subclasses Are Sufficiently Numerous.**

26               *1.    Defendants Concede Numerosity For Both Classes.*

27         Defendants do <u>not</u> contend that either the Pretrial or Post-Conviction Classes are

28   insufficiently numerous.  Their <u>only</u> argument as to numerosity relates to the two

- 2 -

1    Medically Vulnerable Subclasses and the two Disability Subclasses.  Thus, at the outset,

2    this Court can conclude that the numerosity of the two primary classes is not in dispute.

3                    2.    *Common Sense, Reasonable Inferences, and Evidence Ignored By*
                           *Defendants Dictate That The Subclasses Are Sufficiently Numerous.*
4

5            The Medically Vulnerable Subclasses include incarcerated persons who are 50

6    years or older or who have medical conditions that place them at heightened risk of severe

7    illness or death from COVID-19, such as (a) lung disease, (b) heart disease, (c) chronic

8    liver or kidney disease (including hepatitis and dialysis patients), (d) diabetes, (e)

9    hypertension, (f) compromised immune systems (such as from cancer, HIV, or

10   autoimmune disease), (g) blood disorders (including sickle cell disease), (h)

11   developmental disability, (i) severe obesity, and/or (j) moderate to severe asthma.  The

12   Disability Subclasses include all current and future pretrial incarcerated persons who are

13   people with disabilities as defined under the ADA and Section 504, and whose disabilities

14   put them at increased risk of serious illness or death if they contract COVID-19.  This

15   includes all Medically Vulnerable Subclass members except those who are deemed

16   Medically Vulnerable solely because of their age or obesity.  Although Defendants are

17   uniquely capable of identifying precisely how many incarcerated persons fall within these

18   categories—and notably make no affirmative argument that any subclass is insufficiently

19   numerous—Defendants instead suggest that Plaintiffs have provided insufficient evidence

20   to prove numerosity.  Doc. 54 at 5-6.  Defendants are incorrect.

21           "Plaintiffs are not required to establish the precise number of class members, as

22   long as common sense and reasonable inferences from the available facts show that the

23   numerosity requirement is met."  *Ely v. Saul*, No. CV-18-0557-TUC-BGM, 2020 WL

24   2744138, at *13 (D. Ariz. May 27, 2020) (quoting *Lowe v. Maxwell & Morgan PC*, 322

25   F.R.D. 393, 399 (D. Ariz. 2017)).  Here, Defendants concede that there are 4,685

26   incarcerated persons in the five jails as of August 11, 2020.  *See* Doc. 51-1 at ¶ 3.

27   Plaintiffs' complaint asserted that more than 300 people met the definition of "Medically

28   Vulnerable" based solely on being over the age of 50.  *See* Doc. 1 at ¶ 33.  Demonstrating

- 3 -

that the subclasses are sufficiently numerous, Plaintiffs cite a study conducted by the Department of Justice that found that "half of state and federal prisoners and local jail inmates reported having a chronic condition."  Doc. 11 at 12.[1]  Plaintiffs also cite the Centers for Disease Control ("CDC") guidance for detention facilities, recognizing that "incarcerated/detained populations have higher prevalence of infectious and chronic diseases and are in poorer health than the general population, even at younger ages."  *Id*.[2]  Defendants provide no response to these studies.  Defendants cannot simply ignore the cited evidence and then claim none was provided.  From this undisputed information about the number of class members, and the statistical prevalence of significant medical conditions amongst those class members, "common sense and reasonable inferences" suggest that the subclasses are sufficiently numerous.  *Ely*, 2020 WL 2744138, at *13; *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (numerosity generally satisfied where "a class includes at least 40 members.") (citation omitted).[3]

Defendants similarly attempt to evade any direct argument as to joinder.  "In addition to class size, courts consider other indicia of impracticability, such as . . . the size of individual claims, the financial resources of class members, and the ability of claimants to institute individual suits."  *Torres v. Goddard*, 314 F.R.D. 644, 654 (D. Ariz. 2010) (citation omitted).  To be impracticable, joinder must be difficult or inconvenient but need not be impossible.  *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (noting "impracticability does not mean impossibility, but only the

---

[1]     U.S. Dep't of Just., *Special Report NCJ 248491: Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-2012* (revised Oct. 4, 2016), available at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[2]     Centers for Disease Control & Prevention, CS 316182-A, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020), available at https://stacks.cdc.gov/view/cdc/86821.

[3]     Defendants also make the incredible argument that the subclasses are insufficiently numerous because there are only seven proposed class representatives with medical vulnerabilities and seven is not sufficient to establish numerosity.  Doc. 54 at 6.  That is not the standard, nor can it be.  The entire point of a class action is to have a limited number of representatives represent a larger class.  Even a single class representative can be sufficient.  Requiring the number of class representatives to meet the numerosity requirement would defeat the entire purpose of a class action.

- 4 -

1  difficulty or inconvenience of joining all members of the class") (internal quotation marks

2  and citation omitted); *see also Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D.

3  Ariz. 2019) (numerosity is met if "general knowledge and common sense indicate that

4  joinder would be impracticable.").

5        Rather than address the reasons set forth for the impracticability of joinder in

6  Plaintiffs' motion, Defendants argue impracticability should be "considered only when

7  they have provided evidence of a specific number of putative class members to determine

8  whether it is sufficiently numerous."  Doc. 53 at 6.  In other words, Defendants say

9  impracticability should only be considered if the class is already sufficiently numerous

10  based on size, which is a determination that would moot any need to consider

11  impracticability.  Defendants' only citation for this backwards proposition is *Jordan v.*

12  *Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), which expressly rejects their

13  argument.  In *Jordan*, the Ninth Circuit held that the class was <u>not</u> sufficiently numerous

14  based purely on its size but held that numerosity was satisfied anyway because "the

15  presence of other indicia of impracticability persuade us that the requirement has been

16  met."  *Id.*

17        Here, numerosity is satisfied for both reasons: common sense and reasonable

18  inferences demonstrate that the classes and subclasses are sufficiently numerous and that

19  joinder of individual claims would be impracticable.

20        **B.    This Court Already Ruled That Plaintiffs' Claims Raise Common
21              Questions of Law and Fact.**

22        The second Rule 23(a) factor requires a demonstration that "there are questions of

23  law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A clear line of precedent . . .

24  firmly establishes that when inmates provide sufficient evidence of systemic and

25  centralized policies or practices in a prison system that allegedly expose all inmates in that

26  system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied."  *Parsons*,

27  754 F.3d at 684.  Commonality requires plaintiffs to assert claims that "depend upon a

28  common contention . . . capable of classwide resolution—which means that determination

- 5 -

1    of its truth or falsity will resolve an issue that is central to the validity of each one of the

2    claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

3             Here, this Court has already ruled that "Plaintiffs' claims are not about the specific

4    facilities where each is housed, but about Defendants' policies and practices with respect

5    to COVID-19 at all Maricopa County jails."  Doc. 52 at 11.  Thus, as has been recognized

6    by other recent rulings, broad determinations about whether system-wide policies violate

7    the rights of incarcerated persons are precisely the type of common issues that can be

8    resolved "in one stroke" and are ripe for determination on a class basis.  *See e.g.*,

9    *Hernandez Roman*, No. 20-00768 TJH (PVCx), Doc. 52 (certifying class because: "The

10   issue before the Court is whether the manner of their detention—the conditions of their

11   confinement—violates their Fifth Amendment substantive due process rights."); *Fraihat*

12   *v. U.S. Immigration and Customs Enforcement*, No. EDCV 19-1546, 2020 WL 1932570,

13   *18 (C.D. Cal. April 20, 2020) ("Despite Plaintiffs' admitted differences, each putative

14   class member finds herself in [a] similar situation . . . .  As a result, the factual differences

15   are not of the sort that likely affect entitlement to relief or that are likely to change the

16   outcome of the legal analysis.") (citations omitted; *Ahlman*, 2020 WL 2754938; *see also*

17   *Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959, 989 (D. Ariz. 2011), *aff'd*, 695 F.3d

18   990 (9th Cir. 2012) ("In a civil rights suit, 'commonality is satisfied where the lawsuit

19   challenges a system-wide practice or policy that affects all of the putative class

20   members.'") (citations omitted).[4]  Since Plaintiffs filed their motion for class certification,

21   the Central District of California certified a class of 2,000 detained persons based, in part,

22   on a finding that commonality was satisfied because: all of the "class members have been

23   subjected to significant exposure to COVID-19" and there were multiple common facts

24   about how prison policies and procedures were generally applied.  *Torres v. Milusinic*,

25   No. 20-cv-04450-CBM-PVC, 2020 WL 4197285, at *22 (C.D. Cal. July 14, 2020).

26   _____

27   [4]       Defendants address only one of these cases in their response, *Ahlman*, and do so
     only to suggest that that ruling is currently under review and has been stayed by the U.S.
     Supreme Court.  Doc. 53 at 16.  *Ahlman* has not been overruled and Defendants do not

28   cite that any of the other cases, for which they offer no response at all, are under review.

1    Defendants ignore the Court's prior ruling, which was issued before they filed their

2   response and is cited therein.  Instead, they simply regurgitate the argument that

3   commonality does not exist because "Plaintiffs acknowledge there are differences among

4   the confinement conditions at each of the five MCSO jails."  Doc. 53 at 11.  But the Court

5   already rejected that exact argument in holding that this case is about system-wide

6   policies.  *See* Doc. 52 at 11.

7    Notwithstanding its irrelevance to the issue of class certification, Defendants

8   reargue their defenses on the merits, contending that there is insufficient evidence of "a

9   systematically deficient policy or practice that is deliberately indifferent to inmates at all

10   five MCSO Jails."  Doc. 53 at 12.[5]  But "Rule 23 grants courts no license to engage in

11   free-ranging merits inquiries at the certification stage."  *Amgen*, 568 U.S. at 466; *see also*

12   *Eisen*, 417 U.S. at 178 ("In determining the propriety of a class action, the question is not

13   whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

14   merits, but rather whether the requirements of Rule 23 are met.").  For class certification,

15   Plaintiffs do not need to establish that Defendants' system-wide policies are deficient;

16   they merely need to establish that such policies exist.  *See Parsons*, 754 F.3d at 681

17   ("numerous courts have concluded that the commonality requirement can be satisfied by

18   proof of the existence of systemic policies and practices that allegedly expose inmates to a

19   substantial risk of harm.") (citation omitted).  If the policies exist, it is sufficient for

20   Plaintiffs merely to allege that they are insufficient.  *See Unknown Parties v. Johnson*, 163

21   F. Supp. 3d 630, 640 (D. Ariz. 2016) (holding that "claims involving overall conditions

22   that affect the rights of all putative class members are sufficient to satisfy commonality"

---

23   [5]    Defendants also assert that the fourteen declarations submitted by Plaintiffs in

24   support of their motion should be discarded solely because they are "unsworn."  Doc. 53
     at 12.  The strength of Plaintiffs' evidence, which will be supported further by discovery

25   to be obtained from Defendants, is not currently at issue because the commonality
     analysis asks only whether Plaintiffs' allegations raise common questions of law or fact.

26   However, Plaintiffs note that Defendants provide no authority for the assertion that
     unsworn statements cannot be relied upon by the Court, instead citing a single case where

27   a court took issue with "anecdotal evidence."  *Id.*  Plaintiffs' fourteen declarations
     detailing systemic violations of their rights are more than mere "anecdote[es]" and will be

28   fully supported by, and consistent with, additional evidence to be collected in discovery.

- 7 -

1  and that whether "such conditions result from Defendants' stated policies or from their

2  alleged failure to create or adhere to those policies does not change the commonality

3  analysis."); *cf. Parsons*, 754 F.3d at 678 (finding commonality where "all members of the

4  putative class and subclass have in common . . . their alleged exposure, as a result of

5  specified statewide ADC policies and practices . . . , to a substantial risk of serious future

6  harm to which the defendants are allegedly deliberately indifferent.").  The existence of

7  such policies is not disputed, and this Court has already recognized that Plaintiffs have

8  mounted a substantial enough challenge to those policies to survive a motion to dismiss.

9  Rule 23(a)(2) requires nothing more.[6]

10       Defendants also argue that "individualized inquiry defeats commonality and/or

11  Rule 23(b)(2) where, as here, the inmates seek classwide release due to COVID-19," and

12  they cite out-of-circuit district court cases to support this proposition.  Doc. 53 at 17.

13  While there is a circuit split regarding whether habeas relief may be pursued on a class-

14  wide basis, the Ninth Circuit has expressly recognized that although "the usual habeas

15  corpus case relates only to the individual petitioner and to his unique problem[,] . . . there

16  can be cases . . . where the relief sought can be of immediate benefit to a large and

17  amorphous group.  In such cases, it has been held that a class action may be appropriate."

18  *Mead v. Parker*, 464 F.2d 1108, 1112-13 (9th Cir. 1972) (citation omitted); *see also Cox*

19  *v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) ("This court has held that a class action

20

---

21  [6]        Defendants argue without citation that the fact that some incarcerated persons will
   not develop symptoms upon being exposed to COVID-19 somehow defeats commonality.

22  Doc. 53 at 14.  But differences in the specific symptoms experienced by any particular
   class member do not change the fact that all class members assert a common challenge to

23  common practices and procedures that put all class members at risk.  Additionally,
   someone infected with COVID-19 but asymptomatic during the infection period can still

24  be at substantial risk of serious harm.  *See, e.g.*, Robert Glatter MD, *Covid-19 Can Cause
   Heart Damage—Even If You Are Asymptomatic*, FORBES (August 17, 2020 3:24 PM),

25  available at https://cutt.ly/ud6dw9X (discussing "a new study published in JAMA last
   month, demonstrating that even if you are unaware of having any symptoms after

26  recovery from Covid-19, there is the possibility that the virus may cause heart damage or
   inflammation that could put you at risk for complications including heart arrhythmias,

27  heart failure and sudden cardiac death"); *see also, e.g.*, Pien Huang, *We Still Don't Fully
   Understand The Label 'Asymptomatic'*, NPR (June 23, 2020 10:31 AM), available at

28  https://cutt.ly/wd6dsXD (noting high rates of lung damage in asymptomatic patients).

- 8 -

may lie in habeas corpus.") (citation omitted).  *See also Zepeda Rivas v. Jennings*, No. 20-CV-02731-VC, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020) (certifying class of detainees challenging COVID-19 conditions of confinement and holding: "There is nothing about the procedural posture of this lawsuit—such as the fact that it seeks habeas relief . . . that precludes provisional class certification.").  Accordingly, controlling precedent establishes that the individualized inquiry that may eventually be required to identify class members for which release would be appropriate is <u>not</u> a bar to class certification.[7]  In a recent decision within the Ninth Circuit, a district court expressly rejected the same argument that individualized issues regarding release should preclude certification because the proper inquiry, "whether Respondent's existing process with respect to home confinement and compassionate release, as applied to medically vulnerable inmates, amounts to deliberate indifference," is a common one.  *Torres*, 2020 WL 4197285, at *22, at 46 n. 63 (quotation omitted).

### C.    The Class Representatives Are Adequate and Typical.

Defendants combine the typicality and adequacy factors.  Doc. 53 at 6-9.  But the relevant legal standards are not disputed.  Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The "requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks and citation omitted).  Adequacy is satisfied when "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the

---

[7]    Notably, only a single claim asserted by a single subclass (Claim 4, asserted by the Pretrial Medically Vulnerable Subclass) seeks habeas relief.  This argument has no bearing on any other claim or any other form of relief that Plaintiffs seek.

CORE/3502877.0004/161331079.1

1  unlikelihood that the suit is collusive.'"  *Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir.

2  1998) (quoting *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994)).

3           1.      *Reconsideration Of Defendants' Failed Exhaustion Affirmative*
                    *Defense Is Inappropriate and Does Not Bar Class Certification.*

4

5           The only argument that Defendants provide regarding adequacy or typicality that

6  purportedly applies to all eight class representatives is that, according to Defendants, their

7  intention to assert an affirmative defense of non-exhaustion somehow renders all eight

8  Plaintiffs either inadequate or atypical.  Defendants provide no explanation how this is

9  relevant to an adequacy or typicality analysis, and they cite no authority holding that their

10  affirmative defense is relevant to either analysis under Rule 23.[8]  Moreover, this is also a

11  repeat of yet another argument this Court has already rejected.  *See* Doc. 52 at 7.  The

12  Court held that resolution of Defendants' exhaustion argument should not be addressed

13  until the summary judgment stage of proceedings, *i.e.* after both sides have had an

14  opportunity to conduct discovery and provide evidence in support of their positions.[9]  *Id.*

15  Defendants' efforts to reargue that affirmative defense here, in connection with an

16  inapplicable test under Rules 23(a)(3)&(4), is entirely inappropriate.  *See, e.g., Medearis*

17  *v. Oregon Teamster Employers Trust*, No. Cv. 07–723–PK, 2008 WL 4534108, at *2 (D.

18  Or. Oct. 1, 2008) (declining to address exhaustion prior to class certification because "the

19  _____

20  [8] Regarding typicality, Defendants do not explain how a need to satisfy the exhaustion
    requirements under the PLRA, which applies to *all* incarcerated persons, would make the
    class representatives atypical of the Classes and Subclasses they seek to represent.
21  Plaintiffs allege that no administrative remedies are realistically available to the class
    members, thus waiving any exhaustion requirement, and the resolution of that issue is
22  certainly of interest to every member of the class and not just the class representatives.

23  [9] The Ninth Circuit requires that plaintiffs be given an opportunity to conduct
    precertification discovery when doing so is "likely to substantiate the class allegations."
24  *See Perez v. Safelite Group, Inc.*, 553 F. App'x 667, 668-69 (9th Cir. 2014).  To the extent
    that the Court believes resolution of Defendants' affirmative defense based on exhaustion
25  is relevant to class certification, Plaintiffs request an opportunity to take discovery to
    support their allegation that administrative remedies are not reasonably available.  *Id.*
26  ("Failing to allow precertification discovery where it is necessary to determine the
    existence of a class is an abuse of discretion.") (citation omitted).  In the alternative, this
27  Court could provisionally certify the class and then readdress that certification, if
    necessary, after discovery on the merits has occurred.  However, Plaintiffs believe they
28  have presented a more than sufficient basis to certify the class based solely on the papers.

- 10 -

1    merits of an affirmative defense . . . are not properly determined at the class certification

2    stage"); *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) (the court should not

3    "advance a decision on the merits to the class certification stage") (citations omitted).

4          In any event, Plaintiffs Perez and Stepter did exhaust their administrative remedies

5    (*see* Doc. 40 at 19-20).  And there is substantial evidence that administrative remedies are

6    not available to many Plaintiffs, and that no emergency grievance procedure exists.  *Id.* at

7    20-22; *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (the PLRA "does not require

8    exhaustion when circumstances render administrative remedies 'effectively

9    unavailable.'") (citation omitted).  It was Defendants' burden to refute these allegations,

10   and this Court has already ruled that Defendants did not provide a sufficient basis for the

11   Court to determine at the motion to dismiss stage that Plaintiffs had failed to exhaust

12   available remedies.  *See* Doc. 52 at 7; *see Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir.

13   2014) (holding that "the ultimate burden of proof remains with the defendant[s]" to

14   "prove that there was an available administrative remedy").  Defendants concede that,

15   under the doctrine of vicarious exhaustion, Plaintiffs need only establish that the

16   exhaustion requirements are satisfied for a single class representative.  Doc. 53 at 9, n. 7;

17   *see also Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004); *Gates v. Cook*, 376 F.3d

18   323, 329-30 (5th Cir. 2004); *Barfield v. Cook*, No. 3:18-cv-1198, 2019 WL 3562021, at

19   *8 (D. Conn. Aug. 6, 2019); *Lewis v. Washington*, 265 F. Supp. 2d 939, 942 (N.D. Ill.

20   2003).  Thus, exhaustion presents no hurdle to class certification.

21                    2.     *Defendants Do Not Assert Any Other Argument Against Appointing*
                            *Class Representatives For <u>All</u> Classes and Subclasses.*
22

23         Defendants' remaining objections to typicality and adequacy are limited almost

24   entirely to disputing some class representatives' ability to represent specific subclasses.

25   Most importantly, aside from the exhaustion argument, Defendants do not raise any

26   specific adequacy or typicality challenge to Plaintiffs Crough, Perez, Ochoa, and Tequida.

27   If the Court does not accept Defendants' invitation to reconsider the Court's ruling—

28   issued just one week ago—on the same exhaustion arguments that Defendants reassert

here, there is concededly at least one adequate and typical representative for each class and subclass.  Defendants do not dispute Crough's capability to represent the Pretrial Class, Pretrial Medically Vulnerable Subclass, or the Pretrial Disability Subclass.  Nor do they dispute Perez's or Ochoa's capability to represent the Pretrial Class, or Tequida's capability to represent the Post-Conviction Class, Post-Conviction Medically Vulnerable Subclass, or Post-Conviction Disability Subclass.  Thus, every class and subclass has at least one representative even without consideration of the remaining four proposed representatives.[10]

> 3.    *Plaintiffs Fenty, Stepter, and Scroggins Are Typical and Adequate Representatives.*

Defendants claim that Plaintiffs Fenty, Stepter, and Scroggins cannot represent the Medically Vulnerable or Disability Subclasses because they do not meet Defendants' definition of "medically vulnerable."  Doc. 53 at 8.  This argument implicitly makes two critical concessions.  First, Defendants do not argue that Fenty, Stepter, or Scroggins are somehow incapable of representing the Pretrial Class (as opposed to the subclasses within the Pretrial Class).  Second, by changing the definition of "medically vulnerable" and then arguing that Fenty, Stepter, and Scroggins do not meet this new definition, Defendants implicitly concede that Fenty, Stepter, and Scroggins do meet the definition of "medically vulnerable" that Plaintiffs have requested that this Court use when it certifies the class—a definition that Defendants do not directly challenge.

According to Defendants, Fenty, Stepter, and Scroggins are not "medically vulnerable" because they are each under the age of 65 and do not have medical conditions that would place them in the category of persons who are "at increased risk of a severe illness from COVID-19," according to the CDC.  Doc. 53 at 8-9.  Defendants exclude

---

[10]    As this Court has already held, "Plaintiffs' claims are not about the specific facilities where each is housed, but about Defendants' policies and practices with respect to COVID-19 at all Maricopa County jails."  Doc. 52 at 11.  Plaintiffs are not asserting facility-specific claims and thus have no need for a representative for each class from each facility.

from their own definition of "medically vulnerable," which is not the one Plaintiffs seek to certify, anyone older than 50 but younger than 65, as well as anyone with medical conditions that would place them in the CDC's category of persons who "might be at an increased risk of severe illness from COVID-19." *Id.*[11]  Regarding Scroggins, this assertion is simply incorrect.  Defendants concede that a person with "a body mass index of 30 or higher" falls within the CDC's category of people who "are at an increased risk" and their own medical doctor and declarant, Dr. Phillips, has conceded that "Mr. Scroggins has a BMI above 30."  Doc. 49 ¶ 16; Doc. 53 at 8.

More importantly, Plaintiffs have presented substantial evidence that it is inappropriate to exclude people falling in the CDC's "might be at an increased risk" category and people aged 50-64 from the definition of "medically vulnerable" in this case. As explained by Dr. Cohen, the CDC's distinction between conditions that cause an increased risk and those that "might" caused an increased risk is based on the quality and quantity of data currently available in a rapidly shifting environment.  Doc. 41-1 Ex. 11 ¶ 15.  Even for conditions that fall in the "might be" category, "there is consistent evidence of heightened risk but from a smaller number of studies, or where multiple studies may have been conducted with different conclusions about the risk."  *Id.*  Dr. Cohen further explains that, given "the constant evolution of science's understanding of COVID-19, people with medical conditions on either list should be deemed medically vulnerable."  *Id.* ¶ 16.  "The CDC's own data strongly suggests the increased risk from COVID-19 faced by those with chronic conditions in the second category."  *Id.* Additionally, sound scientific evidence indicates that the increased risk based on age begins at age 50, as demonstrated by numerous studies cited in Dr. Cohen's initial declaration.  *See* Doc. 12 ¶¶ 24.  For these reasons, Plaintiffs' definition of the Medically Vulnerable Subclasses—which includes anyone over the age of 50 and anyone possessing medical conditions such as those conditions that are now listed in either of the CDC's two

---

[11] As noted previously, Fenty has hypertension, Scroggins has asthma, and Stepter is 61 years old.

CORE/3502877.0004/161331079.1

1    categories—is reasonable and consistent with CDC guidance.

2          Again, although Defendants purport that Fenty, Stepter, and Scroggins are

3    inadequate or atypical class representatives, they do <u>not</u> assert any challenge to the actual

4    definitions of the classes or subclasses.  Defendants could have objected to a particular

5    class or subclass definition as overbroad, but they chose not to do so.  Defendants prove

6    nothing by arguing that Fenty, Stepter, and Scroggins would be unable to represent

7    hypothetical subclasses that are narrower than the ones they actually seek to represent.

8                    *4.     Plaintiff Reason Can Maintain His Claims.*

9          "Individuals with mooted claims can maintain claims for injunctive relief where

10   they 'are challenging an ongoing government policy.'"  *Fraihat*, 2020 WL 2759848, at

11   *10 (quoting *United States v. Howard*, 480 F.3d 1005, 1010 (9th Cir. 2007)).  Likewise,

12   "where a plaintiff's claim becomes moot while he seeks to certify a class, his action will

13   not be rendered moot if his claims are 'inherently transitory' (such that the trial court

14   could not have ruled on the motion for class certification before his or her claim expired),

15   as similarly-situated class members would have the same complaint."  *Id.*  (citing *Pitts v.*

16   *Terrible Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011)).  "The justification for this

17   rule is that such claims fall into [the] class of cases 'capable of repetition, yet evading

18   review.'"  *Id.*  These factors apply here, as Plaintiff Reason's claims only became

19   potentially moot after the motion for class certification was filed, Doc. 42 at 33, and he is

20   "challenging an ongoing government policy."  As such, he should be allowed to proceed

21   as a class representative.

22                    *5.     Defendants Do Not Dispute The Adequacy Of Class Counsel.*

23         The adequacy inquiry under Rule 23(a)(4) also requires a determination that class

24   counsel are "qualified."  *Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747

25   F.2d 528 (9th Cir. 1984).  Defendants raise no objection to the qualifications of class

26   counsel, so this factor is satisfied.

27         **D.     Rule 23(b)(2) Is Satisfied.**

28         Rule 23(b)(2) is specifically designed for the type of claims that Plaintiffs assert.

                                          - 14 -

1   "Rule 23(b)(2) permits class actions for declaratory or injunctive relief where 'the party

2   opposing the class has acted or refused to act on grounds generally applicable to the

3   class.'"  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (quoting Fed. R. Civ.

4   P. 23(b)(2)).  Indeed, "the primary role of this provision has always been the certification

5   of civil rights class actions." *Parsons*, 754 F.3d at 686 (citation omitted).  "Civil rights

6   cases against parties charged with unlawful, class-based discrimination are prime

7   examples [of Rule 23(b)(2) actions]." *Amchem*, 521 U.S. at 614 (citations omitted); *see*

8   *also Walters*, 145 F.3d at 1047 (Rule 23(b)(2) "was adopted in order to permit the

9   prosecution of civil rights actions.").  Thus, "courts have repeatedly invoked" Rule

10   23(b)(2) "to certify classes of inmates seeking declaratory and injunctive relief for alleged

11   widespread Eighth Amendment violations in prison systems." *Parsons*, 754 F.3d at 686;

12   *cf. Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS (DTBx), 2012 WL 556309,

13   at *9 (C.D. Cal. Jan. 31, 2012), *aff'd*, 501 F. App'x 713 (9th Cir. 2012) (noting that courts

14   "routinely grant provisional class certification for purposes of entering injunctive relief")

15   (citation omitted).  *See also Ahlman*, 2020 WL 2754938, at *8 (Rule 23(b)(2) is met

16   because plaintiffs "allege that the conditions of confinement violate their federal

17   constitutional and statutory rights" and so "a single injunction would provide relief to

18   each class member") (citation omitted).  Defendants do not dispute any of this authority.

19   In fact, aside from a threadbare commonality argument addressed above, which

20   this Court already rejected, Defendants offer no argument suggesting that Rule 23(b)(2) is

21   not satisfied.  Plaintiffs thus satisfy every element of Rule 23(a) and one required element

22   of Rule 23(b), rendering class certification appropriate.

23   **III.    THIS COURT CAN CERTIFY A CLASS TO OBTAIN HABEAS RELIEF.**

24   Defendants' final argument merely rehashes their theory that this Court is

25   somehow barred from certifying a class to pursue release.  Again, the Pre-Trial Medically

26   Vulnerable Subclass is the only class or subclass in this case seeking habeas relief, and

27   that subclass only seeks such relief in connection with a single claim predicated on a

28   single set of facts.  Litigants in the Ninth Circuit plainly can pursue habeas relief on a

- 15 -

1    class-wide basis.  *See Cox*, 829 F.2d at 804 ("This court has held that a class action may

2    lie in habeas corpus.") (citation omitted); *Mead*, 464 F.2d at 1112-13.  Defendants have

3    already asserted every argument they now reassert on this point.  The Court held that "the

4    pandemic and the possibility of irreparable harm to the medically vulnerable Pretrial

5    Plaintiffs who are at high risk of contracting and dying from COVID-19 is an

6    extraordinary circumstance potentially warranting this Court's intervention."  Doc. 52 at

7    14.  That holding should control here, and Defendants offer no sound basis for revisiting it

8    in the context of this procedural motion.  Indeed, regardless of the ultimate merits of the

9    sought habeas relief, the unique circumstances that give rise to the claim here mean that it

10   is it is appropriate for certification under 23(b)(2).

11   **IV.    CONCLUSION**

12           Because Plaintiffs have met all the requirements of Rule 23, the class should be

13   certified.

14   DATED: August 21, 2020

Respectfully submitted,

**STINSON LLP**

*/s/ Larry Wulkan*
   Larry J. Wulkan (021404)
   **STINSON LLP**
   1850 North Central Avenue, Suite 2100
   Phoenix, Arizona 85004-4584

**ETHAN J. SANDERS**
**STINSON LLP**
1201 Walnut Street, Suite 2900
Kansas City, MO 64106

**SHARI ROSS LAHLOU**
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006 - 1110

**PAT ANDRIOLA**
**TIMOTHY LY**
**DECHERT LLP**
Three Bryant Park, 1095 Avenue of the Americas
New York, NY 10036

- 16 -

1

2

3

**BENJAMIN M. SADUN**
**ALLISON OZUROVICH**
**DECHERT LLP**
633 West 5th Street. Suite 4900
Los Angeles, CA 90071

4

5

6

**JARED G. KEENAN**
**CASEY ARELLANO**
**ACLU FOUNDATION OF ARIZONA**
P.O. Box 17148
Phoenix, AZ 85011

7

8

9

10

11

**OLGA AKSELROD**
**ERIC BALABAN**
**ZOE BRENNAN-KROHN**
**HUGH HANDEYSIDE**
**CLARA**
**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10014

12

13

915 15th St. NW, 7th Floor
Washington, DC 20005

14

39 Drumm Street
San Francisco CA 94111

15

16

17

**CERTIFICATE OF SERVICE**

18

19

20

I hereby certify that on August 21, 2020, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF, and served the counsel of record via the Court's CM/ECF System.

21

22

*/s/ Kathleen Kaupke*

23

24

25

26

27

28

- 17 -

CORE/3502877.0004/161331079.1