MGD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Jason Fenty, et al.,

        Plaintiffs/Petitioners,

v.

Sheriff Paul Penzone, et al.,

        Defendants/Respondents.

No.   CV 20-01192-PHX-SPL (JZB)

**ORDER**

      Plaintiffs/Petitioners Jason Fenty, Brian Stepter, Douglas Crough, Edward Reason, Jesus Tequida, Ramon Avenenti, Anthony Scroggins, Dale Perez, and Tamara Ochoa, who are each confined in a Maricopa County jail, and the Puente Human Rights Movement (hereafter "Plaintiffs"), filed through counsel a "Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief" (hereafter "Complaint") concerning the Maricopa County Sheriff's Office's (MCSO) response of the to the COVID-19 pandemic and the risk to Plaintiff of contracting COVID-19 while incarcerated in MCSO jails.  (Doc. 1.)  Pending before the Court is Plaintiffs' Motion for Class Certification.[1]  (Doc. 14.)

. . . .

. . . .

. . . .

---

[1] The Court finds this motion suitable for disposition without a hearing pursuant to Local Rule of Civil Procedure 7.2(f).

**I.     Background[2]**

Plaintiffs filed this action on June 12, 2020, presenting seven claims for relief stemming from Defendants' alleged deliberate indifference to their welfare during the COVID-19 pandemic as well as violations of Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act ("Section 504"). (Doc. 1.) Plaintiffs seek declaratory and injunctive relief and/or writs of habeas corpus requiring the release of certain subclass members and injunctive relief "to abate the risk of the spread of COVID-19." (*Id*. at 47-50.)

In an Order dated August 14, 2020, the Court denied Plaintiffs' Motion for Preliminary Injunction and granted Defendants' Motion to Dismiss the Fourth and Eighth Amendment claims against Defendant Penzone and denied the Motion to Dismiss in all other respects. (Doc. 52.)

**II.     Motion for Class Certification**

Plaintiffs seek certification of two classes: (1) a Pretrial Class, which includes a Pretrial Medically Vulnerable Subclass and a Pretrial Disability Subclass; and (2) a Post-Conviction Class, which includes a Post-Conviction Medically Vulnerable Subclass and a Post-Conviction Disability Subclass.  The proposed Pretrial Class consists of "[a]ll current and future persons held by Defendants in pretrial detention at the five jails operated by the Maricopa County Sheriff's Office, known as the 4th Avenue, Saguaro, Estrella, Lower Buckeye, and Towers jails (together, the 'Maricopa County jails')." (Doc. 11 at 3.) The proposed Post-Conviction Class consists of "[a]ll current and future persons held by Defendants in post-conviction detention at the Maricopa County jails." (*Id.*) The Medically Vulnerable subclasses include the members of each class who are age 50 or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19, such as lung disease, heart disease, chronic liver or kidney disease, diabetes, hypertension, compromised immune systems (such as from cancer, HIV,

---

[2] The full factual and procedural background is set forth in the Court's August 14, 2020 Order granting in part Defendants' Motion to Dismiss and denying Plaintiffs' Motion for a Temporary Restraining Order. (Doc. 52.)

1   or autoimmune disease), blood disorders (including sickle cell disease), developmental
2   disabilities, severe obesity, and moderate to severe asthma.  (*Id*. at 5.)  The Disability
3   subclasses include those with disabilities as defined under the ADA and Section 504 and
4   whose disabilities put them at increased risk of serious illness or death if they contract
5   COVID-19.  (*Id.* at 3.)  By definition, under the ADA and Section 504, all Medically
6   Vulnerable Subclass members, except those who are deemed medically vulnerable solely
7   because of their age or obesity, are also members of the Disability Subclasses.  (*Id*.)

8   **III.    Governing Standard**

9        Federal Rule of Civil Procedure 23 sets out the Court's authority to certify a class
10  action.  "Parties seeking class certification bear the burden of demonstrating that they have
11  met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one
12  of the requirements of Rule 23(b)."  *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 979-
13  80 (9th Cir. 2011) (citations omitted).  Rule 23(a) requires that: (1) the class is so numerous
14  that joinder of all members is impracticable; (2) there are questions of law or fact common
15  to the class; (3) the claims or defenses of the representative parties are typical of the claims
16  or defenses of the class; and (4) the representative parties will fairly and adequately protect
17  the interests of the class.  The Rule 23(a) requirements are known as: "(1) numerosity;
18  (2) commonality; (3) typicality; and (4) adequacy of representation."  *Parsons v. Ryan,* 754
19  F.3d 657, 674 (9th Cir. 2014).  When analyzing whether class certification is appropriate,
20  the Court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a)
21  have been satisfied." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, (2011) (citing *Gen.*
22  *Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 161 (1982)).

23       Plaintiffs argue that they meet the requirements of Rule 23(a) as well as Rule
24  23(b)(2), which requires a demonstration that "the party opposing the class has acted or
25  refused to act on grounds that apply generally to the class, so that final injunctive relief or
26  corresponding declaratory relief is appropriate respecting the class as a whole."

27       As discussed below, the Court finds that certification of the Classes and the
28  Subclasses is appropriate.

## IV.    Rule 23(a) Analysis

### A.    Numerosity

Courts have generally found the numerosity requirement to be satisfied "when a class includes at least 40 members." *Rannis v. Recchia,* 380 F. App'x 646, 651 (9th Cir. 2010) (noting that a class of 15 would be too small and require joinder of all class members rather than class certification) (citing *Gen. Tel. Co. of the NW, Inc. v. EEOC*, 446 U.S. 318, 330 (1980)); *see also Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (noting that "numerosity is presumed at a level of 40 members") (citation omitted); *In re Nat'l W. Life Ins. Deferred Annuities Litig.,* 268 F.R.D. 652, 660 (S.D. Cal. 2010) (noting that "[c]ourts have found joinder impracticable in cases involving as few as forty class members") (citations omitted).  "While no absolute limit exists, numerosity is met when general knowledge and common sense indicate that joinder would be impracticable." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019) (citations omitted).

Plaintiffs argue that the exact numbers and identities of members in each class and subclass are unknown because this information is exclusively within Defendants' control, but that "common sense dictates that each class and subclass almost certainly includes at least 40 members" since Defendants' own reports show there are roughly 4,500 individuals currently within the jails."  (Doc. 11 at 12-13.)  Plaintiffs allege in their Complaint that there are at least 300 people in the MCSO jails who are medically vulnerable based solely on their age, and they cite to a Department of Justice study finding that "half of state and federal prisoners and local jail inmates reported having a chronic condition." (*Id*. at 13.) They also cite to CDC Guidance, which notes that the incarcerated "have higher prevalence of infectious and chronic diseases and are in poorer health than the general population, even at younger ages." (*Id*.)

Plaintiffs also contend that joinder is impracticable because joinder takes time and any delay in this case "will increase serious harms and even deaths" because COVID-19 "is spreading exponentially across the Maricopa County jails." (*Id*. at 13.)  They further

argue that joinder is impracticable because of difficulties in communicating with those who are incarcerated, the inherently transitory nature of the classes and inability to identify future class members, and because many class members are indigent and would have limited ability to seek counsel and file individual actions.  (*Id*. at 14.)

Defendants do not dispute that the numerosity requirement is satisfied for the two proposed classes.  As of August 11, 2020, the MCSO total population was 4,685, (Doc. 54 ¶ 3), and there is no doubt that joinder of all members of the proposed classes would be impracticable.  *See Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 242 (C.D. Cal. 2006) (acknowledging that joinder will be impracticable for very large classes); *Torres v. Goddard*, 314 F.R.D. 644, 654 (D. Ariz. 2010) ("In addition to class size, courts consider other indicia of impracticability, such as . . . the size of individual claims, the financial resources of class members, and the ability of claimants to institute individual suits."). Thus, the numerosity requirement of the two proposed classes is satisfied.

As for the proposed subclasses, Defendants argue that Plaintiffs merely speculate as to how many members there are in the proposed subclasses, and even if numerosity could reasonably be inferred, Plaintiffs have submitted only 12 declarations of inmates still in MCSO custody.  (Doc. 53 at 5.)  Defendants assert that 4 of those inmates are under age 50 and allege no medical conditions, and one declarant has been released, which leaves 5 pretrial detainees and 2 post-conviction inmates as members of the proposed subclasses, which is insufficiently numerous.  (*Id*. at 6.)

Plaintiffs allege in their Complaint, however, that there are at least 300 medically vulnerable inmates in MCSO jails, and the studies Plaintiffs cite suggest that there are at least 40 members in each of the disability subclasses.  These numbers make it impracticable for the Court to join all subclass members in a single action or for subclass members to file individual lawsuits.  Thus, Plaintiffs have satisfied the numerosity requirements of the subclasses.

. . . .

. . . .

### B.      Commonality

To establish commonality, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs need not demonstrate that all questions are common to the class; rather, class claims must "depend upon a common contention . . . [that is] capable of classwide resolution." *Wal-Mart*, 564 U.S. at 350. "Even a single [common] question" will suffice to satisfy Rule 23(a). *Id*. at 359 (citation omitted). In the civil rights context, commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).

In assessing commonality, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen'l. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.") (quotation omitted). That said, although the Court must consider the underlying merits of Plaintiffs' claims to ascertain whether commonality exists, it is not the Court's function at this juncture to "go so far . . . as to judge the validity of these claims." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). Thus, a motion for class certification is not an opportunity to hold "a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The Supreme Court reinforced that plaintiffs are not required to establish their claims at the class certification stage in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.").

Plaintiffs argue that commonality is satisfied because all members of the proposed classes are confined in Maricopa County jails "and are therefore subject to the same policies, procedures, and practices that are part and parcel of Defendants' woefully

1
2
3
4
5
6
7
8
9
10
11

inadequate response to COVID-19." (Doc. 11 at 15.)  Plaintiffs assert that "[a]ll have been directed by the CDC and other health authorities to abide by certain social distancing practices for their own safety, as well as the safety of others, and their common inability to comply with those guidelines is the direct result of the common conditions of confinement provided by the Defendants.  All are subject to the same conditions that actively promote, rather than ameliorate, the spread of COVID-19."  (*Id*.)  They also argue that there are common questions of law because each class and subclass "asks whether the Defendants' policies subject the class members to a heightened risk of serious illness and death" in violation of their Eighth and Fourteenth Amendment rights and the disability subclass asks whether Defendants are violating its members' rights under the ADA and Section 504.  (*Id.* at 16.)

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants raise many issues related to commonality in their Response.[3]  Defendants argue first that Plaintiffs' Motion does not  address the elements of either their constitutional or ADA/Section 504 claims and Plaintiffs "have not demonstrated through significant proof a systematic deficient policy or practice such that those claims can be uniformly resolved in one stroke." (Doc. 53 at 10.)  Defendants cite to *Wal-Mart*, which noted two possible ways of determining commonality in the context of employment discrimination involving a proposed class of both employees and job applicants.  *Wal-Mart*, 564 U.S. at 353.  One method was based on whether the employer used a biased testing procedure to evaluate both applicants and employees; the second method required "[s]ignificant proof that an employer operated under a general policy of discrimination . . . [that] manifested itself in hiring and promotion practices in the same general fashion . . . ."  (*Id.*)   Based on this second test, Defendants argue that commonality is not met.  Defendants go on to  distinguish this action from the commonality findings in *Parsons* and *Unknown Parties v. Johnson,* 163 F. Supp. 3d 630 (D. Ariz. 2016), upon which Plaintiffs rely.  Defendants note that in *Parsons*, the Ninth Circuit found that the plaintiffs exceeded

27
28

---

[3] Defendants address commonality and Rule 23(b)(2) in the same section of their Response.  (*See* Doc. 53 at 10-17.)

the significant proof requirements by presenting "four thorough and unrebutted expert reports . . . hundreds of internal ADC [Arizona Department of Corrections] documents, and [sworn] declarations by the named plaintiff." (*Id.* at 13-14 (quoting *Parsons*, 754 F.3d at 683-84).)  And, in *Unknown Parties*, Defendants note that the district court found that the plaintiffs met the significant proof standard by presenting affidavits and information collected from interviews of 75 civil immigration detainees during a two-year period at 8 facilities. (*Id.* (citing *Unknown Parties*, 163 F. Supp. 3d at 639).)

In this case, Plaintiffs filed their Motion for Class Certification within a day of filing their motion for preliminary injunctive relief, which contained voluminous evidence of allegedly deficient policies or practices with respect to COVID-19, including Declarations of the named Plaintiffs and of one expert, Dr. Robert Cohen, M.D.[4] (Doc. 8, Exs. 1-15; Doc. 12; Doc. 41 Exs. 1-11.)  This evidence contains significant proof of a systematically deficient policy or practice, allowing each of Plaintiffs' claims to be uniformly resolved in one stroke.

Defendants next argue that, while Plaintiffs acknowledge there are differences among the conditions of confinement at the five MCSO jails, Plaintiffs "try to summarily dismiss them as 'minor' without any explanation." (Doc. 53 at 1 (citing Doc. 11 at 13 n.7).)[5]  Defendants, though, do not explain how the conditions of confinement differ in the various jails, and they do not argue that each jail is operating under different policies with respect to COVID-19.  Thus, this argument is without merit.

Defendants also argue that Plaintiffs disregard that the proposed classes and subclasses have inmates at different custody levels and with different medical conditions and disabilities, which affects the case-by-case analysis required to find a constitutional or statutory violation and to remedy it. (*Id.*)  This argument, too, is without merit because

---

[4] That evidence is thoroughly discussed in the Court's August 14, 2020 Order. (*See* Doc. 52.)

[5] Plaintiffs assert in footnote 7 that "although there may be minor differences in the conditions at each of the Maricopa County jails, they each remain subject to the same inadequate policies and procedures enacted and enforced by the Defendants." (Doc. 11 at 15-16 n.7.)

Rule 23 does not require that every putative class member share every fact in common. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Rather, "the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* For purposes of this action, the operative question is not whether each prospective class member faces the same degree of risk or is likely to suffer the same degree of harm, but whether the policies and conditions to which all inmates are equally subject are deliberately indifferent to a substantial risk of serious harm and/or in violation of the ADA and Section 504.

Relevant Supreme Court and Ninth Circuit caselaw supports that this core question of fact and law is amenable to class-wide resolution. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (noting that the risk of contracting a communicable disease is "one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed") (internal citation omitted). "[I]n a civil-rights suit, . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong* 275 F.3d at 868; *Parsons*, 754 F.3d at 678 ("What all members of the putative class and subclass have in common is their alleged exposure . . . to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent.").

In *Parsons*, the Ninth Circuit affirmed the district court's finding of commonality where the plaintiffs had alleged systemic deficiencies in the ADC's provision of healthcare to prisoners. 754 F. 3d at 678−79. *Parsons* found that the alleged constitutionally deficient policies and practices in that action were "the 'glue' that holds together the putative class and the putative subclass; either each of the policies and practices is unlawful as to every inmate or it is not." *Id.* at 678. *Parsons* went on to clarify that this inquiry "does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination." *Id.*

1    Defendants argue that *Parsons* is distinguishable because the court there looked
2    beyond the necessity of individualized determinations by reasoning that at some point all
3    prisoners confined in ADC would eventually need medical care, whereas the Plaintiffs'
4    claims here "are contingent on the alleged dangers posed to each individual inmate if they
5    were to contract COVID-19."  (Doc. 53 at 14.)   Defendants assert that Plaintiffs have
6    acknowledged that many people who contract COVID-19 do not even develop symptoms,
7    that of the 5 inmates who tested positive for COVID-19 in this case, 4 have recovered
8    without a severe illness, and tests results have shown that more than 40% of MCSO inmates
9    who tested positive were asymptomatic.  (*Id.* at 14-15.)   Defendants also point to evidence
10   available online from the CDC that a variety of factors such as underlying medical
11   conditions, age, and race, make the health effects caused by COVID-19 uncertain.  (*Id.* at
12   15.)  From this, Defendants argue that the relevant question is not whether Defendants'
13   policies and practices "adequately prevents COVID-19 infection or spread" but rather
14   "whether every inmate is at substantial risk of serious harm, even if they contracted
15   COVID-19," which "requires an individualized determination of each detainee's
16   circumstance." (*Id.* at 15.)

17   Defendants' attempt to distinguish *Parsons* from this action on the ground that the
18   risks posed to MCSO inmates from exposure to COVID-19 are less certain than the risks
19   posed to the *Parsons* class from exposure to inadequate healthcare is unpersuasive.
20   *Parsons* relied on the Supreme Court's findings in *Helling*, *Farmer*, and *Brown v. Plata*,
21   563 U.S. 493 (2011), as well as prior Ninth Circuit precedents, and it noted that these courts
22   asked "only whether the plaintiffs were exposed to a substantial risk of harm to which
23   prison officials were deliberately indifferent," while, at the same time, they recognized that
24   "many inmates can simultaneously be endangered by a single policy."  *Parsons*, 754 F.3d
25   at 678.  As relevant here, the cases upon which *Parsons* relied involved prisoners' alleged
26   exposures to several different policy- and practice-based risks to prisoners' health and
27   safety.  *Helling* dealt with unsafe drinking water; *Graves v. Arpaio*, 623 F.3d 1043, 1049
28   (9th Cir. 2010) dealt with heat exposure; *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.

1995) dealt with asbestos exposure; and *Hoptowit v. Spellman*, 753 F.2d 779, 783–84 (9th Cir.1985) dealt with substandard fire prevention.  Relying on these and other precedents, *Parsons* affirmed that,

> although a presently existing risk may ultimately result in different future harm for different inmates—*ranging from no harm at all to death*—every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . policy or practice that creates a substantial risk of serious harm.

754 F.3d at 678 (emphasis added).

Here, the proper inquiry relative to Plaintiffs' Eighth and Fourteenth Amendment and ADA/Section 504 claims is not whether each prospective class member can show actual harm from Defendants' policies, but whether each of them, by virtue of their common confinement at MCSO, faces a *substantial risk* of contracting COVID-19 and suffering serious harm as a result.  *Cf. Parsons*, 754 F.3d at 679 ("While no inmate can know in advance whether he will receive adequate and timely care in the event that he falls ill or is injured, or know exactly what form of harm he will suffer . . . , *every single inmate has allegedly been placed at substantial risk of future harm* due to the general unavailability of constitutionally adequate care.") (emphasis added); *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) ("The plaintiffs have not brought a concatenation of individual claims that must be redressed through individual injunctions; they have brought unified claims that 'a specified set of centralized . . . policies and practices . . .' have placed them at a substantial risk of harm.") (internal citation omitted).

Defendants also take issue with the unsworn Declarations of the proposed class members both as insufficiently numerous and because they contain "inadmissible hearsay" about what the declarant allegedly heard someone else say and anecdotes of isolated or sporadic instances of unknown inmates or officers not following MCSO's protocols.  (Doc. 53 at 12.)  The Declarations from each of the named Plaintiffs attest to the alleged constitutionally deficient conditions in the MCSO jails, including a lack of testing for

COVID-19; a lack of medical care for those exhibiting symptoms or testing positive for COVID-19; a lack of social distancing in shared housing facilities, recreation, medical, and food lines; and a lack of personal protective equipment, hygiene and proper cleaning supplies.  (*See, generally*, Doc. 8 Exs. 1-15; Doc. 12; Doc. 41 Exs. 1-11.)  In addition, Plaintiffs have produced the Declarations of Dr. Robert L. Cohen, M.D., an internist with over 30 years' experience in correctional healthcare, including 5 years as Director of the Montefiore Rikers Island Health Services, 17 years as representative of the American Public Health Association on the Board of the National Commission for Correctional Health Care, and as a federal court monitor overseeing efforts to improve medical care for incarcerated people in Florida, Ohio, New York, who opines on MCSO's response to the COVID-19 outbreak in MCSO jails and additional steps that should be taken immediately to reduce the risk posed by COVID-19.  (Doc. 8 Ex. 15; Doc. 12 at 5-85.)

Defendants' comment that the Declarations are unsworn is not a reason to discount this evidence for purposes of class certification.  As noted, a motion for class certification is not an opportunity to hold "a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811; *Unknown Parties*, 163 F. Supp. 3d at 636 (citation omitted).  Here, the Declarations of the named Plaintiffs were taken by Plaintiffs' counsel over the phone and counsel certified in each instance that they had reviewed the information over the phone or by video visit with each respective Declarant, who then "certified that the information contained in this declaration was true and correct to the best of [his or her] knowledge." (*See* Doc. 8, Exs. 1-14.)  Moreover, in a similar action in this District, this Court rejected the habeas respondents' contention that prisoner declarations "taken via telephone due to the unavailability of in-person visits to detainees as a result of the COVID-19 pandemic" should be excluded.  *See Urdaneta v. Keeton*, No. CV-20-00654-PHX-SPL (JFM), 2020 WL 2319980, at *5 (D. Ariz. May 11, 2020).

As to Defendants' hearsay argument, to the extent the Declarations contain statements from MCSO officers or employees, they are likely to be admissions by party opponents and thus not hearsay.  Moreover, the Declarations primarily contain Plaintiffs'

first-hand accounts of the alleged policies, practices and overall living conditions at MCSO jails and are undoubtedly among the most probative evidence in this action.

The Declarations of the named Plaintiffs regarding the relevant living conditions in MCSO's jails, combined with Dr. Cohen's expert opinion on the substantial risks of spreading COVID-19 associated with those conditions, are sufficient to support that the policies and practices of Defendants at MCSO's jails are deliberately indifferent to a substantial risk of serious harm to the inmates and/or in violation of their rights under the ADA and RA.  Accordingly, the Court finds that Plaintiffs have established commonality for the proposed classes and subclasses.

### C.    Typicality

"The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."   *Rodriguez*, 591 F.3d at 1124 (internal citations and quotations omitted).  "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* (internal citations and quotations omitted).

Plaintiffs argue that each of the named Plaintiffs "assert substantively identical claims that arise from the same failure by Defendants to adequately implement social distancing and other appropriate health and safety measures" at the MCSO jails in response to COVID-19 and that each of the named Plaintiffs is "subject to similar conditions of confinement that present a significant yet avoidable risk of serious illness and death from contracting COVID-19." (Doc. 11 at 17.)

Defendants combine their analysis of the typicality and adequacy factors in their Response. (*See* Doc. 53 at 6-9.)  They argue that Plaintiff Reason is not a member of any Class or Subclass, that Plaintiffs Fenty, Stepter, and Scroggins are not typical or adequate

representatives of the Pretrial subclasses, and that none of the Plaintiffs have exhausted available remedies. (*Id.*)

### 1.    Pretrial Class and Subclasses

Plaintiffs seek to have Fenty, Stepter, Crough, Scroggins, Perez and Ochoa represent the Pretrial Class and to have Fenty, Stepter, Crough, and Scroggins additionally represent Pretrial Medically Vulnerable and Disability Subclasses. (Doc. 11 at 7-8, 10.)

Defendants do not dispute that Fenty, Stepter, Crough, Scroggins, Perez and Ochoa are typical representatives of the Pretrial Class. Therefore, the Court finds that these six Plaintiffs are typical of the Pretrial Class. Defendants do argue that Fenty, Stepter, and Scroggins are not typical or adequate representatives of the Pretrial subclasses. (Doc. 53 at 8-9.) They argue that while Fenty, Stepter, and Scroggins meet Plaintiffs' definition of "medically vulnerable," they do not meet the CDC guidelines of who is at most risk of a severe illness from COVID-19 based on their age and/or alleged medical conditions and so are not typical of the Pretrial Subclass claims and are inadequate class representatives.[6] (Doc. 53 at 8-9.) Defendants contend that only Crough's allegation that he is 55 and suffers COPD puts him "at risk" of a severe illness from COVID-19, but that Fenty, Stepter and Scroggins only allege medical issues where they "might be at increased risk" for a severe illness from COVID-19. (*Id.* at 9.)

Plaintiffs reply that Defendants do not directly challenge Plaintiffs' definition of "medically vulnerable," but instead have supplied their own definition of "medically vulnerable," thereby implicitly conceding that the definition Plaintiffs have requested applies to Fenty, Stepter, and Scroggins. (Doc. 62 at 14.) Plaintiffs cite to Dr. Cohen's Declaration in which he explains that the CDC's distinction between those medical conditions that cause an increased risk of severed illness or death from COVID-19 and those that "might" cause an increased risk "is based on the quality and quantity of data

---

[6] Plaintiffs' define "medically vulnerable" as those "aged 50 years or older or [who] have medical conditions that place them at heightened risk of severe illness or death from COVID-19," such as lung disease, heart disease, chronic liver or kidney disease, diabetes, hypertension, compromised immune systems, blood disorders, developmental disability, severe obesity, and/or moderate to severe asthma. (Doc. 11 at 5.)

currently available in a rapidly shifting environment." (*Id.*, citing Cohen Decl. ¶ 15 (Doc. 41, Ex. 11).) Cohen states that "given the constant evolution of science's understanding of COVID-19, people with medical conditions on either [CDC] list should be deemed medically vulnerable" and that the "CDC's own data strongly suggests the increased risk from COVID-19 faced by those with chronic conditions in the second category." (*Id.*, citing Cohen Decl. ¶ 15.)

Plaintiffs allege that Fenty is 48 years old and has stage 2 hypertension, adjustment disorder with anxiety, PTSD, and chest pain; Stepter is 61 and has chronic respiratory problems that result in difficult breathing, requires oxygen treatments to clear his lungs, and has high blood pressure, Crough is 55 and has a heart condition, COPD, hepatitis, and chest pain caused by stable angina; and Scroggins is 44 and has asthma. Defendants do not argue that these Plaintiffs do not meet Plaintiffs' definitions of the medically vulnerable and disability subclasses or that Plaintiff's definitions are inappropriate. The Court therefore finds that Fenty, Stepter, Crough and Scroggins are adequate representatives of the Pretrial Medically Vulnerable and Disability Subclasses.

## 2. Post-Conviction Class and Subclasses

Plaintiffs seek to have Reason, Tequida, and Avenenti represent the Post-Conviction class and for Reason and Tequida to represent the Post-Conviction Medically Vulnerable and Disability Subclasses. (Doc. 11 at 9-10.)

Defendants argue that Plaintiff Reason may not proceed as a class representative at all because his claims became moot before class certification and Plaintiffs may not substitute him with another class representative. (Doc. 53 at 7.) Defendants previously asserted in response to Plaintiffs' motion for injunctive relief that Reason was released from custody on July 11, 2020. (Doc. 28 at 36.)

The fact that Plaintiff Reason has been released is irrelevant because Defendants do not dispute the adequacy or typicality of Tequida or Avenenti in representing the Post-Conviction Class and Tequida in representing the Post-Conviction Subclasses. Thus, Tequida and Avenenti are typical of the Post-Conviction Class and Tequida is typical of

1  the Post-Conviction Subclasses and they may adequately represent those classes and

2  subclasses.

3  ### 3.     Exhaustion of Administrative Remedies

4       Defendants also argue that Plaintiffs are not typical and adequate class

5  representative because they have not exhausted available administrative remedies before

6  bringing their claims and are therefore precluded from representing the classes and

7  subclasses.  (Doc. 53 at 9.)

8       Plaintiffs respond that Defendants' exhaustion argument is inappropriate, they do

9  not provide any authority holding that their affirmative defense is relevant to the typicality

10  or adequacy analysis under Rule 23, and this affirmative defense does not bar class

11  certification.  (Doc. 62 at 12.)

12       Defendants raised the issue of exhaustion of administrative remedies in their prior

13  Motion to Dismiss.  (Doc. 28.)  In the Court's August 14, 2020 Order, the Court rejected

14  this argument and Defendants' evidence because consideration of this evidence would

15  require the Court to go beyond the face of the Complaint, and the Court declined to convert

16  Defendants' Motion to Dismiss into one for summary judgment.  (Doc. 52 at 7.)  The Court

17  noted that Defendants may renew their exhaustion argument in a properly supported

18  summary judgment motion.  (*Id*.)  Defendants filed their Response to Plaintiff's Motion

19  for Class Certification (Doc. 53) the same day the Court issued its Order on Defendants'

20  Motion to Dismiss, and Defendants presumably did not have the benefit of the Court's

21  analysis of the exhaustion argument.  Defendants have presented no authority to support

22  that it is appropriate to address exhaustion at the class certification stage.  Therefore,

23  Defendants' current exhaustion argument is without merit, but Defendants may renew the

24  argument in a properly supported summary judgment motion.

25  ### D.     Adequacy of Representation

26       Rule 23(a)(4) requires that class representatives fairly and adequately represent the

27  interests of the entire class.  "This factor requires: (1) that the proposed representative

28  Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs

are represented by qualified and competent counsel." *Dukes v. Wal-Mart Stores, Inc*, 603 F.3d 571, 614 (9th Cir. 2010) (*rev'd on other grounds by* 564 U.S. 338); *see also Rodriguez*, 591 F.3d at 1125 ("Whether the class representatives satisfy the adequacy requirement depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.") (internal citations and quotations omitted).

The Supreme Court has found that commonality and typicality also relate to a representative's adequacy. *See Gen. Tel. Co.,* 457 U.S. at 157 n.13. Defendants do not make any specific argument related to adequacy, and the Court has already determined that Plaintiffs have satisfied the commonality and typicality factors. As to Plaintiffs' counsel, Plaintiffs assert that class counsel are attorneys from the ACLU and the law firms of Dechert, LLP and Stinson, LLP and have "extensive relevant experience to litigate this matter to completion," and have either participated as class counsel or have extensive subject-matter expertise in civil rights cases, including in other cases related to COVID-19 in the detention context. (Doc. 11 at 18.) They further assert that the individually named Plaintiffs have the requisite personal interest in the outcome of this case that they share with all class member and will fairly and adequately protect the interests of the proposed classes. (*Id.* at 18-19.) Accordingly, the Court finds the adequacy requirement is satisfied.

## V.     Rule 23(b)(2) Analysis

To obtain class certification, Plaintiffs must also satisfy one of the requirements set forth in Federal Rule of Civil Procedure Rule 23(b). Plaintiffs claim that they meet the requirements under Rule 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[7]

---

[7] Plaintiffs also argue, in the alternative, that the proposed classes satisfy Rule 23(b)(1) "because requiring hundreds of individual class members to prosecute separate actions on the same claims would create a significant risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants." (Doc. 11 at 19 n.8.)

1    Plaintiffs argue there can be no reasonable dispute that this action falls squarely

2    within Rule 23(b)(2) because courts "have repeatedly invoked Rule 23(b)(2) to certify

3    classes of inmates seeking declaratory and injunctive relief for alleged widespread Eighth

4    Amendment violations in prison systems."  (Doc. 11 at 19 (quoting *Parsons*, 754 F.3d at

5    686).)  Plaintiffs also cite to *Rodriguez*, which held that the requirements of Rule 23(b)(2)

6    were met when "class members complain of a pattern or practice that is generally

7    applicable to the class as a whole" and when "class members seek uniform relief from a

8    practice applicable to all of them."  591 F.3d at 1125-26.  Plaintiffs argue that those

9    requirements are easily satisfied here because Defendants have subjected all proposed class

10   members to the same unconstitutional policies or practices that expose Plaintiffs to an

11   unreasonable risk of serious harm and the injunctive relief requested by Plaintiff is

12   appropriate for each class as a whole. (Doc. 11 at 19.)

13       The only specific argument Defendants make regarding Rule 23(b)(2) is that

14   commonality and/or Rule 23(b)2) are lacking because the Court would need to determine

15   whether each class member can be released into a situation that does not place them or the

16   general public at a heightened risk of contracting COVID-19, and, because Plaintiffs are

17   each held under different criminal statutes, the considerations regarding their release vary

18   from one inmate to another.  (Doc. 53 at 16-17.)

19       The only class for which Plaintiffs seek release are the members of the Pretrial

20   Medically Vulnerable and Pretrial Disability Subclasses who are incarcerated "solely due

21   to their inability to afford a financial condition of release, or whose release Defendants do

22   not object to[.]"  (Doc. 1 at 48 ¶ c.)  Plaintiffs further request injunctive relief and/or writ

23   of habeas corpus "imposing a process—to be determined by the Court—to consider the

24   release or enlargement of all remaining Pretrial Medically Vulnerable Subclass and Pretrial

25   Disability Subclass members not released pursuant to Paragraph c within two weeks, and

26   members of the Post-Conviction Medically Vulnerable Subclass" using such factors as the

27   inmate's risk of flight or danger to others, whether that risk is outweighed by the threat to

28

the inmate's health and safety posed by their exposure to COVID-19 in the MCSO jails, and the length remaining on a convicted inmate's sentence.  (*Id.* ¶ d.)

For purposes of Rule 23(b)(2), what matters is that a pattern of alleged violations can be remedied for all putative class members by the same form of injunctive relief. Plaintiffs have met that requirement here by seeking a class-wide process for determining who is entitled to release, and this process will apply across the board to the relevant class members and thereby facilitate the ease of determining release.

Plaintiffs have also satisfied Rule 23(b)(2) for the reasons already discussed with respect to commonality.  For each proposed class and subclass, Plaintiffs have alleged that Defendants have failed to take constitutionally adequate measures to prevent the spread of COVID-19, creating a substantial risk of infection for all class members in MCSO jails "on grounds that apply generally to the class."  Fed. R. Civ. P. 23(b)(2).  Further, in seeking to remedy the conditions of confinement for all class members, Plaintiffs have sought "final injunctive relief or corresponding declaratory relief [that] is appropriate respecting the class[es and subclasses] as a whole."  *Id.*

**VI.   Habeas Claim**

In their Fourth Claim for Relief, Plaintiffs assert a habeas corpus claim pursuant to 28 U.S.C. § 2241 on behalf of all Pretrial Medically Vulnerable Subclass members for alleged Fourteenth Amendment violations.  (Doc. 1 at 42-43.)  Plaintiffs allege that the continued confinement of this subclass "is punitive, not rationally related to a legitimate purpose, and/or excessive in relation to any legitimate purpose, in addition to being objectively deliberately indifferent."  (*Id.* ¶ 182.)  Plaintiffs further allege that "there are no conditions of confinement that will adequately protect members of the Pretrial Medically Vulnerable Subclass from the risk of infection, serious injury and death from COVID-19."  (*Id.* ¶ 184.)  And they contend that "[t]he only way to [ ] to remove the unacceptable risk posed to the Pretrial Medically Vulnerable Subclass by COVID-19 is to remove these class members from the jail via release or enlargement."  (*Id.* ¶ 188.)  As previously noted, Plaintiffs seek the immediate release of all members of the Pretrial

Medically Vulnerable Subclass who remain incarcerated solely because they cannot afford a financial condition of release or whose release Defendants do not object to and for a process to consider the release or enlargement of the remaining Pretrial Medically Vulnerable and Disability Subclass members.  (*Id.* at 48.)

Defendants argue that the Court should not certify the habeas petition "for all the reasons that the underlying constitutional and statutory claims should not be certified." (Doc. 53 at 17-18.)  Defendants assert that the Supreme Court "has never addressed whether habeas relief can be pursued in a class action" but that such actions are "ordinarily disfavored."  (*Id.* at 17 (quoting *Jennings v. Rodriguez*, 138 S.Ct. 830, 858 n.7 (2018) (Thomas, J., concurring) and citing *Rodriguez v. Hayes*, 591 F.3d 1104, 1117 (9th Cir. 2010)).)

Plaintiffs reply that they are seeking habeas relief on behalf of the Pretrial Medically Vulnerable Subclass "in connection with a single claim predicated on a single set of facts" and that the Ninth Circuit has permitted habeas relief on a class-wide basis.  (Doc. 62 at 17-18, citing *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) (holding that "a class action may lie in habeas corpus") and *Mead v. Parker*, 464 F.2d 1108, 1112-13 (9th Cir. 1972) (holding that a class action in habeas corpus may be appropriate "where the relief sought can be of immediate benefit to a large and amorphous group").)

"Courts are split as to whether claims by prisoners in light of the COVID-19 pandemic are challenges to the fact or duration of confinement properly brought as a habeas claim under Section 2241, or challenges to the conditions of confinement which fall outside the core of habeas corpus."  *Torres*, 2020 WL 4197285, at *6 (citing cases).  In *Torres*, the district court concluded that the plaintiffs/petitioners properly asserted a § 2241 habeas claim challenging the fact of their confinement because the petitioners there asserted that there was "no set of conditions of confinement that could be constitutional."  *Id.* at *7. Likewise, here, Plaintiffs have alleged that "there are no conditions of confinement that will adequately protect members of the Pretrial Medically Vulnerable Subclass from the risk of infection, serious injury and death from COVID-19."  (Doc. 1 ¶ 184.)  Thus, the

Court concludes that Plaintiffs have properly asserted a habeas claim in their Fourth Claim for Relief pursuant to § 2241 challenging the fact of their confinement.

**VII.    Conclusion**

Because the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b) are met, the Court will grant Plaintiffs Motion for Class Certification and certify the two proposed classes and four subclasses in this action.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Plaintiffs' Motion for Class Certification (Doc. 11) and the Motion is **granted**.

(2)    The following Classes and Subclasses are **certified** pursuant to Rule 23:

(a)    **The Pretrial Class**, defined as

All current and future persons held by Defendants in pretrial detention at the five jails operated by the Maricopa County Sheriff's Office, known as the 4th Avenue, Saguaro, Estrella, Lower Buckeye, and Towers jails (together, the "Maricopa County jails").

Within the Pretrial Class are two Subclasses:

(1)    **Pretrial Medically Vulnerable Subclass**, defined as

Members of the Pretrial Class who are aged 50 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 such as lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), developmental disability, severe obesity, and/or moderate to severe asthma.

(2)    **Pretrial Disability Subclass** defined as

All current and future pretrial detainees who are people with disabilities as defined under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act ("Section 504"), and whose

disabilities put them at increased risk of serious illness or death if they contract COVID-19. The Pretrial Disability Subclass includes all members of the Pretrial Medically Vulnerable Subclass except those vulnerable solely on the basis of age or obesity.

(b)    **The Post-Conviction Class**, defined as

All current and future persons held by Defendants in post-conviction detention at the Maricopa County jails.

Within the Post-Conviction Class are two Subclasses:

(1)    **Post-Conviction    Medically    Vulnerable Subclass** defined as

Members of the Post-Conviction Class who are aged 50 years or older or who have medical conditions that place them at heightened risk of severe illness or death from COVID-19 such as lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), developmental disability, severe obesity, and/or moderate to severe asthma.

(2)    **Post-Conviction Disability Subclass** defined as

All current and future post-conviction detainees who are people with disabilities as defined under the ADA and Section 504, and whose disabilities put them at increased risk of serious illness or death if they contract COVID-19. The Post-Conviction Disability Subclass includes all members of the Post-Conviction Medically Vulnerable Subclass except those vulnerable solely on the basis of age or obesity.

(3)    Named Plaintiffs Fenty, Stepter, Crough, Scroggins, Perez, and Ochoa are **appointed** as representatives of the Pretrial Class. Plaintiffs Fenty, Stepter, Crough, and Scroggins are additionally **appointed** as representatives of the Pretrial Medically Vulnerable Subclass and the Pretrial Disability Subclass.

. . . .

. . . .

1
2
3
4

       (4)    Named Plaintiffs Tequida and Avenenti are **appointed** as representatives of the Post-Conviction Class.  Plaintiff Tequida is additionally **appointed** as representative of the Post-Conviction Medically Vulnerable Subclass and the Post-Conviction Disability Subclass.

5

       Dated this 13th day of November, 2020.

6
7
8

Honorable Steven P. Logan
United States District Judge

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28