Shari Ross Lahlou (DC 476630) *
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006
Tel: (202) 261-3300
Fax: (602) 261-3333
Email:  shari.lahlou@dechert.com

*Additional counsel listed on following page*
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Fenty, *et al.*,<br><br>　　　　　　Plaintiffs-Petitioners,<br><br>Puente Human Rights Movement,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Sheriff Paul Penzone, in his official capacity, and Maricopa County, a municipal entity,<br><br>　　　　　　Defendants. | No. 2:20-cv-01192-SPL-JZB<br><br>**PLAINTIFFS-PETITIONERS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>EXPEDITED  HEARING  AND  ORAL ARGUMENT REQUESTED |

Brian Raphel (NY 5592308)
Pat Andriola (NY 5406327) *
Timothy Ly (NY 5478540) *
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
brian.raphel@dechert.com
pat.andriola@dechert.com
timothy.ly@dechert.com

Benjamin M. Sadun (CA 287533) *
Allison Ozurovich (CA 312797) *
**DECHERT LLP**
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
benjamin.sadun@dechert.com
allie.ozurovich@dechert.com

Shari Ross Lahlou (DC 476630) *
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006 - 1110
Telephone: (202) 261-3300
Shari.lahlou@dechert.com

Olga Akselrod (NY 4132825) *
Aditi Shah (NY 5886254)*
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500
oakselrod@aclu.org
ashah@aclu.org

Corene T. Kendrick (CA 226642) *
Kyle Virgien (CA 278747) *
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
39 Drumm Street
San Francisco, CA 94111
Telephone: (202) 393-4930
ckendrick@aclu.org
kvirgien@aclu.org

Jared G. Keenan (AZ 027068)
Benjamin L. Rundall (AZ 031661)
**ACLU FOUNDATION OF ARIZONA**
P.O. Box 17148
Phoenix, AZ 85011
Telephone: (602) 650-1854
jkeenan@acluaz.org
brundall@acluaz.org

* Admitted Pro Hac Vice

1     Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs-Petitioners hereby
2   respectfully seek a preliminary injunction commanding Sheriff Paul Penzone and
3   Maricopa County (collectively, "Defendants") to immediately provide class member
4   Loretta Johnson a COVID-19 vaccine, including any additional doses consistent with
5   guidance by the Food and Drug Administration ("FDA") and the U.S. Centers for Disease
6   Control and Prevention ("CDC"). This motion is supported by the following
7   Memorandum of Points and Authorities, the expert declarations of Dr. Tara Vijayan and
8   Eric Feigl-Ding, and the expert report of Dr. Homer Venters. In the interest of justice and
9   public health, Plaintiffs-Petitioners respectfully request that the Court waive any security
10   requirement. *See* Fed. R. Civ. P. 65(c).

## MEMORANDUM OF POINTS AND AUTHORITIES

For the last year, vaccines have provided most Americans a glimmer of relief from the fear that they will suffer the worst of the consequences of the COVID-19 pandemic. Almost 60% of Maricopa County residents have received at least one dose of the vaccine;[1] over 80% of the people incarcerated in Arizona's state prisons are vaccinated.[2]

Defendants, however, have denied some of the people they lock away this opportunity to be vaccinated. The vaccination rates among people detained in Maricopa County jails are just ███████.[3] Declaration of Aditi Shah ("Shah Decl.") Ex. 2 at 42:25-43:4. There are several reasons for these abysmal numbers. First, until recently, Defendants relied predominantly on the Johnson & Johnson vaccine despite reports by medical experts and the U.S. Centers for Disease Control and Prevention ("CDC") that it is less safe and less effective in comparison to the messenger RNA (mRNA) vaccines produced by Pfizer-BioNTech and Moderna. Second, Defendants have failed to provide people in their custody any educational materials to explain their decision to offer the Johnson & Johnson vaccine or to otherwise allow detainees to make an informed decision regarding vaccination. Defendants have also failed to provide any incentives for vaccination despite the Maricopa County Correctional Health Services ("CHS") Medical

---

[1]   *Maricopa   County   COVID-19   Vaccine   Data*,   Maricopa   County https://www.maricopa.gov/5671/Public-Vaccine-Data (last updated Feb. 8, 2022).

[2]   Pablo Lopez, *More than 80% of ADCRR inmate population fully vaccinated against COVID-19*, News 4 Tucson (Oct. 27, 2021), https://www.kvoa.com/news/more-than-80-of-adcrr-inmate-population-fully-vaccinated-against-covid-19/article_b87bbb96-3777-11ec-9818-df7d5e3059fb.html.

[3]   Plaintiffs asked Defendants to identify the portions of the deposition transcripts in this case that they contend are confidential by January 26, 2022 so that Plaintiffs could appropriately designate their expert report due on January 28. Shah Decl. Ex. 7 at 6. Defendants announced on January 27 that they were designating *all* deposition transcripts of Defendants' 30(b)(6) witnesses or fact witnesses to be confidential, and that therefore any portions of Dr. Venters' expert report relying upon or citing these transcripts were similarly confidential. *Id.* at 5. Such blanket designations of all transcripts as confidential are improper, as explained in the notice of lodging under seal filed with this motion. Counsel met and conferred regarding this dispute on February 2, 2022. *Id.* at 4. Defendants agreed to replace their blanket designations with narrower, specific designations on a rolling basis, but they would not agree to provide specific designations for the transcripts attached to this motion in time for this filing. *Id.* at 2–3. Much of the record in this case thus presently remains under overbroad blanket designations. In an abundance of caution, Plaintiffs-Petitioners are lodging under seal an unredacted version of this brief, an unredacted version of Dr. Venters' expert report, and unredacted copies of the deposition transcripts attached to Ms. Shah's declaration.

1   Director's admission that ██████████████████████████████. Shah Decl. Ex. 2 at
2   145:10-25 ████████████████████████████████████████████████████████████████
3   ████████████████████████████████████████████████████████████████████████
4   ████████████████████████).

5        Most crucially, Defendants lock away too many people with too few staff, and one
6   of the consequences of staffing shortages is that they deny vaccines even to people who
7   have been requesting them for months. Indeed, staffing shortages forced Defendants to
8   bring in the National Guard to vaccinate people last fall. Jimmy Jenkins, *National Guard*
9   *gives COVID-19 vaccinations to incarcerated in Maricopa County jails,* Arizona
10  Republic (Nov. 5, 2021), https://www.azcentral.com/story/news/local/phoenix-
11  breaking/2021/11/05/national-guard-give-covid-19-vaccinations-maricopa-county-
12  jails/6301662001/.[4] Defendants have publicly reported that of the over 5,000 people in
13  their custody eligible to be vaccinated, they administered just 15 vaccinations over the
14  first 20 days of this year.[5] The CHS Medical Director also admitted that this poor
15  performance is due to ████████████████████████████████████████████████████
16  ████████████████████████████████████████████████████████████████████████
17  ████████████ Shah Decl. Ex. 3 at 123.

18       Ms. Johnson is a medically vulnerable woman detained at the Estrella Jail. She has
19  requested a COVID-19 vaccine from Defendants but has not yet received one. As
20  COVID-19 continues to spread rapidly in the Maricopa County jails, access to vaccines
21  is more crucial now than ever. The CDC and medical experts have encouraged
22  vaccination as one of the most important measures individuals can take to protect
23  themselves from contracting COVID-19, as well as to reduce their risk of serious illness
24  or death from COVID-19. This is especially true for individuals like Ms. Johnson who

25

26  _____
    [4]     Defendants also had to call in the National Guard to mitigate shortages among its
27  security staff. Jimmy Jenkins, *Maricopa County Sheriff's Office asked for National*
    *Guard troops to help understaffed jails,* Arizona Republic (Oct. 29, 2021),
28  https://www.azcentral.com/story/news/local/arizona-breaking/2021/10/29/maricopa-
    county-sheriffs-office-national-guard-assistance/6194936001/.
    [5]     *See* Shah Decl. Ex. 5.

are older and have medical conditions that subject them to a heightened risk of becoming severely ill or dying from COVID-19.

Yet, despite the well-known importance of vaccination and Ms. Johnson's request for a COVID-19 vaccine, Defendants have failed to provide her one. Instead, Ms. Johnson has only been told that a vaccine would be ordered for her and that she is on a list, with no indication of whether and when she will actually receive a vaccine. Each day Ms. Johnson is denied this basic and widely available protection, her health and safety are endangered. Defendants' failure to provide Ms. Johnson a COVID-19 vaccine poses an unreasonable risk to her health and safety and constitutes unlawful punishment in violation of her Fourteenth Amendment due process rights. The solution is inexpensive and easy: provide a COVID-19 vaccine to Ms. Johnson as she has requested. The Court should order Defendants to immediately do so.

## I.   STATEMENT OF FACTS

### A.   COVID-19 Continues to Pose a Significant Risk of Serious Illness and Death at the Maricopa County Jails.

COVID-19 continues to pose a significant risk of serious illness and death, with more than 1.5 million cases and 16,000 deaths nationwide in just the last seven days, and more than 13 million cases and over 64,000 deaths in the United States over the past four weeks.[6] Due to the highly infectious Omicron variant, daily case numbers, hospitalizations, and deaths have reached record highs. As of February 5, 2022, over 96 percent of COVID-19 cases in the United States were caused by the Omicron variant.[7] Arizona has also experienced unprecedented numbers of COVID-19 hospitalizations, as

---

[6]    U.S. Ctrs. for Disease Control and Prevention (CDC), *United States COVID-19 Cases, Deaths, and Laboratory Testing (NAATs) by State, Territory, and Jurisdiction*, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#cases_deathsinlast7days (last visited Feb. 10, 2022); Johns Hopkins University, Coronavirus Resource Center, *COVID-19 Dashboard by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU)*, Johns Hopkins University of Medicine, https://coronavirus.jhu.edu/map.html (last visited Feb. 10, 2022).

[7]    *Id.*, U.S. Ctrs. for Disease Control and Prevention (CDC), *Variant Populations*, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last updated Feb. 8, 2022).

1  the state has ████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████   Shah Decl. Ex. 1 ¶ 12.[8] The CDC has classified the community

4  transmission rate in Maricopa County with its highest designation because of the rate of

5  new cases.[9] Maricopa County is also ranked as the second highest county in the country

6  for number of confirmed COVID-19 cases and number of confirmed COVID-19 deaths

7  as of February 10, 2022.[10] *See also* Declaration of Dr. Tara Vijayan ("Vijayan Decl.") ¶

8  6.

9       The risk of COVID-19 spreading is even higher in congregate settings such as jails

10  and correctional facilities. *See* Shah Decl. Ex. 2 at 63:5-8 (████████████████████████

11  ████████████████████████████████████████████████████████

12  ████████████████████). As the CDC has explained: "People in correctional and

13  detention facilities are at greater risk for some illnesses, such as COVID-19, because of

14  close living arrangements with other people."[11] Maricopa County jails are currently in the

15  midst of an outbreak of COVID-19. According to Maricopa County's own data, as of Feb.

16  10, 2022, there are 1,243 people who have tested positive for COVID-19 in Defendants'

17  custody.[12] As the Medical Director admitted, in his ██████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████   Shah Decl. Ex. 3 at 101. In addition, Desiree Rodriguez, who is

20  detained at the Estrella Jail, describes how she was "particularly worried about the long

21  delay to vaccinate [her] because [she has] seen the jail take some steps that have put [her]

---

[8]  Dr. Venters's opening expert report in this case is attached as Shah Decl. Ex. 1.

[9]  *Id.*, U.S. Ctrs. for Disease Control and Prevention (CDC), *COVID-19 Integrated County View*, COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Arizona&data-type=Risk&list_select_county=4013(last updated Feb. 10, 2022).

[10]  Johns Hopkins University, Coronavirus Resource Center, *COVID-19 United States Cases by County*, Johns Hopkins University of Medicine, https://coronavirus.jhu.edu/us-map (last updated Feb. 9, 2022).

[11]  U.S. Ctrs. for Disease Control and Prevention (CDC), *FAQs for Correctional and Detention Facilities*, (Jan. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html.

[12]  Maricopa County, *COVID-19 In County Jails*, https://www.maricopa.gov/5574/COVID-19-in-County-Jails (last updated Feb. 10, 2022).

health and the health of others around me at serious risk," including a COVID-19 outbreak in the jail and Defendants mistakenly placing a COVID-19 positive person in her dorm, combining dorms on quarantine, and individuals in her dorm coming in and out from work or medical visits even when her dorm has been on quarantine. Declaration of Desiree Rodriguez ("Rodriguez Decl.") ¶¶ 8–13.

Although in many cases COVID-19 may result in less severe health outcomes, that is not so for people like Ms. Johnson who are medically vulnerable and are unvaccinated. *See* Shah Decl. Ex. 1 ¶ 13; *see also* Vijayan Decl. ¶¶ 7, 11. The majority of hospitalizations and deaths due to COVID-19 are among those who are unvaccinated and/or have underlying medical conditions.[13] *See* Vijayan Decl. ¶ 11. In addition to the immediate health consequences that are likely to result for medically vulnerable and unvaccinated individuals, there is growing evidence that people may experience long-term consequences such as ███████████ which means █████████████ ████████████████████████ Shah Decl. Ex. 1 ¶ 13. As a result, COVID-19 continues to pose a significant risk to the health and safety of people detained at Maricopa County jails such as Ms. Johnson.

**B.     Ms. Johnson, Who Is Both Elderly and Medically Vulnerable, Faces a Heightened Risk of Serious Illness and Death from COVID-19.**

The risk of "severe illness" from COVID-19 is heightened for people who are older and who, regardless of age, have certain medical conditions. As the CDC has explained, "[s]evere illness means that a person with COVID-19 may: Be hospitalized[,] Need intensive care[,] Require a ventilator to help them breathe[,] [or] Die."[14] Medical conditions that place people at a higher risk of severe illness from COVID-19 include, among others, heart conditions, high blood pressure (hypertension), and chronic lung

---

[13] Emily Barone, *These Charts Show That COVID-19 Is Still the Pandemic of the Unvaccinated*, Time, (Jan. 12, 2022), https://time.com/6138566/pandemic-of-unvaccinated/.
[14] U.S. Ctrs. for Disease Control and Prevention (CDC), *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 9, 2022).

diseases including chronic bronchitis.[15] In addition, the risk for severe illness from COVID-19 increases with age. "The risk [for severe illness from COVID-19] increases for people in their 50s and increases in 60s, 70s, and 80s."[16]

Loretta Johnson is a 63-year-old woman who has been in pre-trial detention at the Estrella Jail since April 2021. Declaration of Loretta Johnson ("Johnson Decl.") ¶ 1. Ms. Johnson is at a heightened risk for serious illness or death from COVID-19 due to her age as well as her medical conditions, which include high blood pressure. *Id.* ¶ 2. Despite her risk factors and the length of time she has been detained, Ms. Johnson has not been provided a COVID-19 vaccine. *Id.* ¶ 3. About two months ago, Ms. Johnson saw a medical provider for an unrelated health matter and was informed by the provider of the importance of being vaccinated against COVID-19. *Id.* ¶ 4. When the provider asked her if she wanted to be vaccinated, she said yes and was told a vaccine would be ordered for her. *Id.* Since then, although Ms. Johnson has witnessed other individuals at the Estrella Jail be vaccinated, she was told each time that she was not on the list to receive a vaccine. *Id.* ¶ 5. Most recently, on February 8, Ms. Johnson was told by other detainees in her pod that her name was on a list to receive the vaccine, but she could not receive it that day as she was in court. *Id.* ¶ 6. Rather than promptly providing Ms. Johnson a vaccine after she returned from court, Ms. Johnson remains unvaccinated as of February 10, 2022. *Id.* ¶ 7.

Despite the jail's medical provider's recommendation that Ms. Johnson be fully vaccinated given her vulnerabilities, and jail officials' awareness of her need and desire for a COVID-19 vaccine, two months after her request she has yet to receive one.

### C.   Vaccination Is Necessary to Provide Ms. Johnson Basic Protection Against COVID-19.

It is well established that one of the most important protective measures against COVID-19 is vaccination. The CDC has explained that: "Vaccines remain the best public

---

[15] *Id.*

[16] U.S. Ctrs. for Disease Control and Prevention (CDC), *COVID-19 Risks and Vaccine Information for Older Adults* (Aug. 2, 2021), https://www.cdc.gov/aging/covid19/covid19-older-adults.html.

health measure to protect people from COVID-19, slow transmission, and reduce the likelihood of new variants emerging."[17] As noted above, people who are at the greatest risk of serious illness or death from COVID-19, including the highly infectious Omicron variant, are the unvaccinated and medically vulnerable. The risk of hospitalization for unvaccinated people due to COVID-19 is four times higher than people who are vaccinated, and the death rate due to COVID-19 for unvaccinated people is 12.7 times higher than that of people who are vaccinated.[18] "For Omicron, as for prior variants, vaccinations and boosters remain the most effective public-health tool we have to limit the risk of infection and serious side effects." Declaration of Eric Feigl-Ding ("Feigl-Ding Decl.") ¶ 14. Accordingly, "vaccination is a critical and effective tool in reducing transmission of the virus, a particularly important factor in congregate environments." Vijayan Decl. ¶ 21.

Vaccination is especially critical for people who "are older or have multiple or severe health conditions."[19] As a result, medical experts and the CDC have encouraged everyone, but especially older adults and people with certain medical conditions, to be vaccinated as quickly as possible.[20] In addition, it is undisputed that vaccination is particularly important in congregate settings such as jails because of the greater risk of exposure to COVID-19.[21] *See* Shah Decl. Ex. 2 at 63:5-8. Ms. Johnson possesses a

---

[17] U.S. Ctrs. for Disease Control and Prevention (CDC), *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last updated Feb. 2, 2022).

[18] Johnson AG, Amin AB, Ali AR, et al., C*OVID-19 Incidence and Death Rates Among Unvaccinated and Fully Vaccinated Adults with and Without Booster Doses During Periods of Delta and Omicron Variant Emergence — 25 U.S. Jurisdictions, April 4–December 25, 2021*, MMWR Morb Mortal Wkly Rep., (January 28, 2022) DOI: http://dx.doi.org/10.15585/mmwr.mm7104e2.

[19] U.S. Ctrs. for Disease Control and Prevention (CDC), *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 9, 2022).

[20] *See, e.g.*, Ctrs. For Disease Control and Prevention (CDC), *COVID-19 Risks and Vaccine Information for Older Adults*, *supra* note 18.

[21] U.S. Ctrs. for Disease Control and Prevention (CDC), *COVID-19 Vaccine FAQs in Correctional and Detention Centers*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/vaccine-faqs.html (updated June 1, 2021) ("CDC recommends everyone get vaccinated against COVID-19, including people who are incarcerated or detained. Incarcerated or detained people living in correctional and

1  combination of the most significant risk factors for COVID-19 transmission and serious

2  illness or death from COVID-19—age, medical condition, and living in a congregate

3  setting—making her need for a vaccine all the more pressing.

4        Given the importance of COVID-19 vaccines, Defendants' own employees, such

5  as the CHS Assistant Medical Director, have exalted vaccination as ██████████████

6  ████████████████████████████ Shah Decl. Ex. 4 at 69:15-16. Indeed, Maricopa

7  County has announced that its "goal is to make COVID-19 vaccine available to everyone

8  who wants it wherever they live in the county."[22] Accordingly, Defendants' failure to

9  provide COVID-19 vaccines to medically vulnerable persons who live within the

10  county's jails defies not only the CDC's recommendations and well-established medical

11  science, but also the views of Defendants' own correctional health services physicians

12  that people in the jail ████████████████████████████████████████████████████

13  ███████████████████████████████████ Shah Decl. Ex. 4 at 141:23-25; *see*

14  *also* Shah Decl. Ex. 2 at 43:14-16, 43:24-44:1 (████████████████████████████

15  ████████████████████████████████████████████████████████████████████████

16  ██████████████████████████████).

17  **D.   Defendants Have Failed to Provide Ms. Johnson a COVID-19 Vaccine, Despite her Request Two Months Ago for One.**

18

19        Despite Ms. Johnson's request for a COVID-19 vaccine, and despite Defendants'

20  awareness of the critical importance of vaccines especially for those who are medically

21  vulnerable and/or older, Defendants have not yet provided her a vaccine. Defendants'

22  failure to provide Ms. Johnson a vaccine is emblematic of their inadequate COVID-19

23  vaccination procedures and system. Although Defendants offer COVID-19 vaccines to

24  some people in the jail, they admit that they have only been able to vaccinate

25  approximately ████████████ of the entire jail population. Shah Decl. Ex. 2 at 42:25-43:3.

26  detention facilities are at higher risk of exposure to COVID-19 for various reasons, including being in close proximity (less than 6 feet) to other people. Incarcerated people

27  might also be older or have medical conditions that make them more likely to get severely ill from COVID-19.").

28  [22]   Maricopa   County,   *Making   Vaccine   Available   to   All*, https://www.maricopa.gov/5705/Vaccine-Distribution (last accessed Feb. 1, 2022).

1   The failures of Defendants' vaccination program include inadequate education regarding

2   vaccines, staffing shortages to the point of requiring the assistance of the National Guard,

3   and lacking reliable methods to track detained peoples' vaccine statuses.

4         Defendants' failure to provide adequate information and education regarding

5   vaccines has resulted in some people refusing the vaccine. CHS physicians have described

6   ███████████████████████████████████████████████████████████

7   ███████████████████████████████████████████████████████████

8   ██████████████████   *See* Shah Decl. Ex. 2 at 148:1-12; Shah Decl. Ex. 4 at 339:3-

9   11. Ashley Wilkeyson, who is detained at the Estrella Jail, provides a strong example: she

10   initially declined the Johnson & Johnson vaccine because Defendants failed to provide

11   information regarding its efficacy and side effects. Declaration of Ashley Wilkeyson

12   ("Wilkeyson Decl.") ¶ 2. It was only after Ms. Wilkeyson was able to obtain more

13   information about the mRNA vaccines from sources other than Defendants, such as her

14   family, that she changed her mind about wanting to be vaccinated. *Id*. ¶ 6. In addition,

15   Defendants have not provided people incarcerated in the jails any incentives to encourage

16   vaccination, even though they admit that incentive programs work. Shah Decl. Ex. 2 at

17   145:10-25 ████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████

19   █████████████████).

20         These refusals, however, represent only one part of Defendants' systemic failures

21   in their vaccination program. Severe staffing shortages have also prevented Defendants

22   from providing vaccines to people incarcerated in the jails. As noted above, in the first 20

23   days of this year, Maricopa County's public vaccination tracker reflected just 15

24   vaccinations of the over 5,000 people in the jails eligible to be vaccinated. Shah Decl.

25   Ex. 5. The CHS Medical Director admitted that the reason for this abysmal number was that

26   the jail ██████████████████████████████████████████████████

27   ███████████████████████████████████████████████████████████

28   ██████████████████████████████████████████ Shah Decl. Ex.

3 at 123. Indeed, as mentioned above, staffing shortages have even required National Guard troops to be deployed at the Maricopa County jails to help distribute vaccines to people incarcerated in the jails.[23] Despite their awareness of this issue, Defendants have not developed any contingency plan to counteract the harmful effects, including on the distribution of COVID-19 vaccines to people incarcerated in the jails, of prior and ongoing staffing shortages.

In addition, Defendants do not have a reliable system to keep track of class members who need vaccination or a booster, nor do they have a policy requiring the provision of vaccines to class members who have requested one within a certain period of time. As Dr. Venters recommended: ███████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████ Shah Decl. Ex. 1 ¶ 61. It is clear that Defendants are not currently doing this, as the CHS Medical Director testified that ████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████. Shah Decl. Ex. 2 at 118.

In addition to Ms. Johnson's experience discussed above, the long wait times for vaccines that other women detained at the Estrella Jail have experienced further illustrate the inadequacies of Defendants' vaccination program. Ms. Wilkeyson requested the vaccine four or five times by submitting health needs requests ("HNRs") since October 2021 and informing medical staff, but only received the Moderna vaccine on February 1, 2022.[24] Wilkeyson Decl. ¶¶ 1, 5, 9. Ms. Wilkeyson has medical conditions that place her

---

[23]    Jimmy Jenkins, *National Guard gives COVID-19 vaccinations to incarcerated in Maricopa County jails,* Arizona Republic (Nov. 5, 2021) https://www.azcentral.com/story/news/local/phoenix-breaking/2021/11/05/national-guard-give-covid-19-vaccinations-maricopa-county-jails/6301662001/; Jimmy Jenkins, *Maricopa County Sheriff's Office asked for National Guard troops to help understaffed jails,* Arizona Republic (Oct. 29, 2021) https://www.azcentral.com/story/news/local/arizona-breaking/2021/10/29/maricopa-county-sheriffs-office-national-guard-assistance/6194936001/.

[24]    The HNRs Ms. Wilkeyson submitted are in the sole possession of Defendants, but Ms. Wilkeyson declares under penalty of perjury that she submitted them.

at a heightened risk of serious illness or death from COVID-19, including hypertension and chronic bronchitis. *Id*. ¶ 3. However, each time she requested a vaccine, she was told she would be placed on a "waiting list." *Id*. ¶ 6. Similarly, Ms. Rodriguez made two requests to be vaccinated for COVID-19 in October 2021, and was not provided a vaccine until months later in January 2022. Rodriguez Decl. ¶¶ 5, 7. Ms. Rodriguez is also medically vulnerable to COVID-19 due to her asthma, and was worried she would have a serious reaction if she contracted the virus. *Id*. ¶¶ 2–3. On December 17, 2021, Plaintiffs-Petitioners' counsel sent an email to Defendants' counsel, noting that Ms. Rodriguez and Ms. Wilkeyson requested vaccines and did not yet receive them. *See* Shah Decl. Ex. 6 at 2 (Dec. 17, 2021 Email from K. Virgien to A. Hesman).[25] Notwithstanding repeated requests by Ms. Wilkeyson and Ms. Rodriguez, and by counsel, only recently did they finally receive their vaccines. Their experiences corroborate the failings of Defendants' vaccination program for people detained at the jails, some of which have even been conceded by Defendants' own employees.

## II.   <u>ARGUMENT</u>

A movant is entitled to a preliminary injunction when she "is likely to succeed on the merits," she "is likely to suffer irreparable harm in the absence of preliminary relief," when "the balance of equities tips" in her favor, and when an injunction "is in the public interest." *Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990, 996–97 (D. Ariz. 2020) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit applies a "sliding scale" approach, under which "a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to [a] plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

---

[25]    Notification of Defendants' counsel can be imputed to Defendants. *See, e.g., Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir. 1976) (letter to insurance company's attorney was admissible to show insurer was on notice that claimant would settle); *Harper v. Ryan*, No. CV-18-00298-PHX-DGC (CDB), 2020 WL 836824, *21-24 (D. Ariz. Feb. 20, 2020) (holding that multiple advocacy letters sent by class counsel in an injunctive relief case involving medical care of all people incarcerated in Arizona prisons, were imputed to named defendant via his counsel and constituted a failure to act).

1131 (9th Cir. 2011). As a result, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. Ms. Johnson satisfies each element and is therefore entitled to the critical and constitutionally required relief of a COVID-19 vaccine.

### A.   Ms. Johnson Is Likely to Succeed on the Merits of Her Claims.

To establish a likelihood of success on the merits, Ms. Johnson "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012) (citation omitted). Because Ms. Johnson is a pre-trial detainee, her claims arise under the Fourteenth Amendment. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018) ("[T]he medical care claims brought by pretrial detainees . . . arise under the Fourteenth Amendment's Due Process Clause . . . .") (internal quotation marks and citation omitted). Ms. Johnson is likely to establish that Defendants' failure to provide her a COVID-19 vaccine violates her Fourteenth Amendment substantive due process rights because it poses an unreasonable risk to her health and safety, and Defendants have failed to take reasonable available measures to abate that risk. Ms. Johnson is also likely to establish that Defendants' failure to provide her a COVID-19 vaccine constitutes unlawful punishment, also in violation of her Fourteenth Amendment substantive due process rights.

> *1. Defendants' Failure to Provide a COVID-19 Vaccine Violates Ms. Johnson's Fourteenth Amendment Due Process Rights Because Defendants' Failure to Act Poses an Unreasonable Risk to her Health and Safety.*

When "the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," which includes reasonable "medical care." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). To evaluate pre-trial detainees' Fourteenth Amendment due process claims, the Ninth Circuit

applies an "objective deliberate indifference standard," which requires that: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125.

Each element is satisfied here. First, Defendants have intentionally chosen not to provide Ms. Johnson a COVID-19 vaccine despite Defendants' knowledge that she has a heightened risk of serious illness or death from COVID-19 and her explicit request for a vaccine. *See, e.g.*, *Urdaneta v. Keeton*, No. CV2000654PHXSPLJFM, 2020 WL 2319980, at *10 (D. Ariz. May 11, 2020), *appeal dismissed*, No. 20-16363, 2020 WL 6043896 (9th Cir. Sept. 14, 2020) ("Respondents have made an intentional decision with respect to the conditions under which Petitioner is detained by failing to implement responsive measures specific to high-risk detainees in LPCC, despite knowledge of the acute risks posed to them.").

Second, Defendants' failure to provide Ms. Johnson a COVID-19 vaccine has put her "at substantial risk of suffering serious harm." *Gordon*, 888 F.3d at 1125. As discussed above, there is scientific consensus that vaccines provide critical protection against contracting COVID-19 and serious illness or death from COVID-19. *See* Vijayan Decl. ¶ 21, Feigl-Ding Decl. ¶ 14. Without a vaccine, Ms. Johnson faces a heightened risk of serious illness or death from COVID-19, especially because of her medical condition and age. The Supreme Court has long acknowledged that the risk of exposure to infectious diseases is a condition for which the Constitution requires a remedy, even if it "was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed." *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[H]aving stripped

1  [prisoners] of virtually every means of self-protection and foreclosed their access to

2  outside aid, the government and its officials are not free to let the state of nature take its

3  course."); *Brown v. Plata,* 563 U.S. 493, 531-32 (2011) ("Even prisoners with no present

4  physical or mental illness may become afflicted and all prisoners [] are at risk so long as

5  the State continues to provide inadequate care. . . . Prisoners who are not sick . . . [are] in

6  no sense [] remote bystanders in [the prison's] remote bystanders in California's medical

7  care system. They are that system's next potential victims.").[26] Courts in this Circuit have

8  acknowledged that "the COVID-19 vaccine is a 'serious medical need'" for people who

9  are incarcerated. *Maney v. Brown,* 516 F. Supp. 3d 1161, 1178 (D. Or. 2021)

10 ("Defendants do not challenge the objective prong . . . and the Court agrees that the

11 COVID-19 vaccine is a 'serious medical need' for [adults in custody]."); *see also Patel*

12 *v. Cnty. of Orange,* No. 817CV01954JLSDFM, 2019 WL 4238875, at *6 (C.D. Cal. Jun.

13 19, 2019) (concluding based on the Supreme Court's holding in *Helling* that because "the

14 exposure to the risk of contracting hepatitis is enough to state an Eighth Amendment

15 claim" that "the need for vaccines to prevent the contraction of hepatitis logically is a

16 'serious' medical need").

17        Third, Defendants' failure to provide Ms. Johnson a COVID-19 vaccine was a

18 failure to "take reasonable available measures to abate that risk, even though a reasonable

19 official in the circumstances would have appreciated the high degree of risk involved—

20 making the consequences of the defendant's conduct obvious." *Gordon,* 888 F.3d at 1125.

21 There is no shortage of COVID-19 vaccines; they are readily available and as Dr. Venters

22 observed: ██████████████████████████████████████████████

23 ████████████████████████████████████████████ Shah Decl. Ex. 1 ¶

24 46 (emphasis added). Indeed, given Dr. Venters's recommendation that the Maricopa

---

26       While many of the cases cited herein relate to the Eighth Amendment standards
for medical care for incarcerated persons who have been convicted of crimes, conditions
inflicted upon persons subject to Fourteenth Amendment standard of review that violate
the Eighth Amendment standard *a fortiori* are unconstitutional. *City of Revere v. Mass.
Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that "the due process rights of a person []
are at least as great as the Eighth Amendment protections available to a convicted
prisoner").

1  County jails ████████████████████████████████████████████

2  ███████████████████████   Shah Decl. Ex. 1 ¶ 61, the relief requested here is well

3  within the bounds of what Defendants can reasonably provide. In addition, as noted

4  above, physicians at CHS have testified as to ████████████████████████████

5  ████████████, as has Defendant Maricopa County in its public announcement

6  regarding its prioritization of encouraging vaccination for *all* County residents. As a

7  result, Defendants are indisputably "aware of the serious risk that COVID-19 poses" to

8  Ms. Johnson "and the critical role that vaccines play in controlling the spread of the

9  virus." *Maney*, 516 F. Supp. 3d at 1178; *see also Farmer* 511 U.S. at 842 ("[A] factfinder

10  may conclude that a prison official knew of a substantial risk from the very fact that the

11  risk was obvious.").

12      Lastly, by failing to provide Ms. Johnson a COVID-19 vaccine, Defendants

13  subject her to an unreasonable risk of serious illness or death. *See Gordon*, 888 F.3d at

14  1125. With COVID-19 cases continuing to spread in light of the Omicron variant and

15  likely future variants, and considering the heightened risk for older and medically

16  vulnerable people, Defendants' failure to provide Ms. Johnson a COVID-19 vaccine

17  exponentially increases her risk of contracting and becoming severely ill or dying from

18  COVID-19. *See* Vijayan Decl. ¶ 21. The serious risk of harm Ms. Johnson faces to her

19  health and safety, and Defendants' awareness of that risk and the critical importance of

20  COVID-19 vaccines, suffice to establish that Defendants' failure to provide her a vaccine

21  violates her due process rights. Ms. Johnson need not establish current infection or illness.

22  "It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-

23  threatening condition in their prison on the ground that nothing yet had happened to

24  them." *Helling*, 509 U.S. at 33.

25      *2. Defendants' Failure to Provide COVID-19 Vaccines to Ms. Johnson*
26      *Constitutes Punishment in Violation of her Fourteenth Amendment Due*
      *Process Rights.*

27      A pre-trial "detainee may not be punished prior to an adjudication of guilt in

28  accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

1   Defendants' failure to provide Ms. Johnson a COVID-19 vaccine constitutes unlawful

2   punishment in violation of her due process rights because Defendants' failure to provide

3   her a vaccine is not "rationally related to a legitimate nonpunitive governmental purpose."

4   *Id.* at 538–39. Although Maricopa County "has legitimate interests stemming from its

5   need to manage a detention facility that may justify imposed conditions, such as

6   preserving internal order and maintaining institutional security," "conditions which pose

7   an objectively unreasonable and substantial risk of serious harm to detainee health or

8   safety are not rationally related to a legitimate nonpunitive government purpose."

9   *Urdaneta*, 2020 WL 2319980, at *9.

10   Defendants' failure to provide Ms. Johnson a COVID-19 vaccine bears no relation

11   to any legitimate government interest in detaining her. As the Supreme Court has

12   recognized, "the State's responsibility to attend to the medical needs of prisoners does

13   not ordinarily clash with other equally important governmental responsibilities." *Whitley*

14   *v. Albers*, 475 U.S. 312, 320 (1986); *see also Estelle v. Gamble*, 429 U.S. 97, 103 (1976)

15   ("[D]enial of medical care may result in pain and suffering which no one suggests would

16   serve any penological purpose."). Although these are Eighth Amendment cases, "they are

17   relevant insofar as they identify action which serves legitimate institutional objectives,

18   and inaction which clearly does not." *Urdaneta*, 2020 WL 2319980, at *9 n.25.

19   Accordingly, because Defendants' failure to provide Ms. Johnson a COVID-19

20   vaccine does not share any relation to a legitimate government interest, their failure

21   plainly violates Ms. Johnson's due process rights. If anything, Defendants' failure

22   impedes their own interests in "maintain[ing] security and order at the institution" and

23   "ensur[ing] that the detainee shows up at trial." *Bell*, 441 U.S. at 540. The more people

24   who are incarcerated at Defendants' jails are vaccinated, the greater protection people in

25   the jails have against COVID-19. This in turn helps reduce the crisis of the pandemic that

26   has affected management of the jails and utilization of limited resources such as staff, as

27   discussed above. Moreover, providing a COVID-19 vaccine to Ms. Johnson directly

28   furthers Defendants' interest in ensuring her attendance at trial and court proceedings,

given that vaccination is an important measure in reducing the chance Ms. Johnson will contract COVID-19 and be unable to attend court. Defendants' failure to provide COVID-19 vaccines thus not only bears no rational relation to their legitimate government interests, but indeed acts against their own interests.

**B.    Without Receiving COVID-19 Vaccines, Ms. Johnson Is Likely to Suffer Irreparable Harm.**

Without receiving a COVID-19 vaccine, Ms. Johnson is very likely to contract COVID-19 and suffer serious illness or death from COVID-19. Ms. Johnson "will suffer irreparable harm" if she will experience "pain, infection, amputation, medical complications, and death due to delayed treatment." *Harris v. Bd. of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 766 (9th Cir. 2004). As discussed above, medical experts, the CDC, and Defendants' own physician employees agree that ███████████████████ ████████████████████████████████████████. For Ms. Johnson, this risk is compounded by her medical vulnerability, age, and detention in a congregate setting. Accordingly, as the Ninth Circuit has held, incarcerated people who demonstrate a risk of contracting COVID-19 are "likely to suffer irreparable harm absent relief given COVID-19's high mortality rate." *Roman v. Wolf*, 977 F.3d 935, 944 (9th Cir. 2020). With the continuing surge in cases caused by the Omicron variant and the likelihood of future variants, *see* Feigl-Ding Decl. ¶ 16, Ms. Johnson is very likely to suffer irreparable harm in the form of serious illness or death without promptly receiving COVID-19 vaccines.

**C.    The Balance of Equities and Public Interest Weigh Heavily in Ms. Johnson's Favor.**

The balance of equities and public interest weigh heavily in Ms. Johnson's favor given the "preventable human suffering" and the public's interest in ensuring Defendants' compliance with the Constitution. *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (citation omitted). Defendants do not have a legitimate interest in depriving Ms. Johnson of a COVID-19 vaccine, nor would they be burdened by an order from this Court requiring them to provide a vaccine to Ms. Johnson. As discussed above, COVID-19

risk of irreparable harm that Ms. Johnson faces, including serious illness or death, strongly weighs in her favor.

Moreover, the rule in the Ninth Circuit is that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). An injunction requiring Defendants to provide Ms. Johnson a COVID-19 vaccine would serve the public interest not only for this reason, but also because reducing the risk of spread of COVID-19 benefits the community at large. *See, e.g.*, *Maney*, 516 F. Supp. 3d at 1184 ("[T]he Court finds that the balance of equities and public interest weighs in favor of vaccinating [adults in custody] as soon as possible."); *see also Banks v. Booth*, 468 F. Supp. 3d 101, 124 (D.D.C. 2020) ("[G]ranting injunctive relief which lessens the risk that Movants will contract COVID-19 is in the public interest because it supports public health.").

## III.   **CONCLUSION**

For the foregoing reasons, Ms. Johnson respectfully requests that this Court issue a preliminary injunction directing Defendants to immediately provide her a COVID-19 vaccine, including any additional doses consistent with FDA and CDC guidance.

RESPECTFULLY SUBMITTED this 11 day of February, 2022.

*/s/ Shari Ross Lahlou*
Olga Akselrod
Aditi Shah
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004

Corene T. Kendrick
Kyle Virgien
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

21

39 Drumm Street
San Francisco, CA 94111

Jared G. Keenan
Benjamin Rundall
**ACLU FOUNDATION OF ARIZONA**
P.O. Box 17148
Phoenix, AZ 85011

Larry J. Wulkan
**ZWILLINGER WULKAN, PLC**
2020 North Central Avenue, Suite 675
Phoenix, AZ 85004

Shari Ross Lahlou
**DECHERT LLP**
1900 K Street, N.W.
Washington, DC 20006 - 1110

Brian Raphel
Pat Andriola
Timothy Ly
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

Benjamin M. Sadun
Allison Ozurovich
**DECHERT LLP**
633 West 5th Street, Suite 4900
Los Angeles, CA 90071

1

2

**CERTIFICATE OF SERVICE**

3

     I hereby certify that on February 11, 2022, I caused the foregoing document to be

4

filed electronically with the Clerk of the Court through ECF, and served the counsel of

5

record via the Court's CM/ECF System.

6

7

                                   */s/ Shari Ross Lahlou*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28